## Tyler, et al. v. Fidelity & Columbia Trust Company, Trustee of Levi Tyler.

(Decided March 27, 1914.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Estates—Alienation.—The absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and 21 years and 10 months thereafter.

2. Estates—Perpetuities.—Under the rule against the creation of perpetuities, the validity of any future estate depends upon the certainty of its vesting within the described period, and this certainty must exist at the time of the creation of the estate; the estate will be void when this certainty does not exist at the time of the creation, although subsequent events so happen that the estate could vest after that period.

3. Estates—Perpetuities—Rule as to Limiting.—In applying the rule against perpetuities it is an invariable rule that regard is to be had for possible and not merely the actual events; that is, to render future estates valid they must be so limited that in every possible contingency they will vest within the statutory period.

4. Estates—Perpetuities—Test for Determining Existence of.—The test for determining the existence of a perpetuity is not whether the event or contingency named upon which the estate devised may vest in the ultimate takers does happen, or may happen, but whether it is possible that it might not happen within that time; if it is possible that the event or contingency upon which

the estate will finally vest may not happen within the limit prescribed by the rule against perpetuities, the instrument is void, or at least so much thereof is void as relates to this remote event or contingency.

5. Wills—What Term "Grandchildren" Includes.—The term, "grandchildren" includes not only grandchildren in being at the death of the testator, but any grandchildren that may be thereafter born.

6. Children—Law Presumes Woman Capable of Bearing and Man Capable of Begetting, Regardless of Age.—The law conclusively presumes that a woman is capable of bearing, and that a man is capable of begetting children until they die, regardless of their ages.

7. Wills—Violation of Statute Against Perpetuities.—A devise by which an estate was held in trust during the life of the testator's son, and after his death to be held in like trust until the death of the testator's last surviving grandchild, the fee to be then divided equally between the testator's great-grandchildren or their descendants, violates the statute against perpetuities, and is void.

8. Estates—Setting Aside Trust—Statute Against Perpetuities—Wills.—When a trust is set aside upon the ground that it violates the statute against perpetuities, the intention of the testator, as expressed in the will, will be followed as far as possible in the division of the estate, and when the trust can by reason of the inhibition of the statute, be carried no further, the estate will then be divided between those entitled thereto under the law, and not under the will.

EDWARD P. HUMPHREY for appellants.

FAIRLEIGH & FAIRLEIGH for certain appellees.

Opinion of the Court by Judge Miller—Affirming.

This is a suit to construe the will of Levi Tyler, who died on March 16, 1861, a resident of the city of Louisville. His wife, Eliza O. Tyler, had theretofore died in 1840 The testator left one son only, Henry S. Tyler, whose wife was Rebecca A. Tyler.

So much of the will as is pertinent to this inquiry is found in the fourth and fifth clauses thereof, which read as follows:

"4. It is my will and I hereby direct that out of the rents and profits of my estate my said trustee and executor shall quarterly and oftener if needed and necessary, appropriate a full, fair, reasonable and liberal amount as far as the rents and profits of my estate will justify, and enable him to do so, for the support of Rebecca A. Tyler, wife of my said son, and their chil-

dren now in being or hereafter born. I regard the education of the children as included in the word 'support.'

"5. After the death of said Henry S. Tyler, and his wife Rebecca, and the survivor of them, my said trustee and executor shall appropriate the rents and profits of my estate quarterly or half-yearly amongst my grandchildren and their descendants, the descendants taking in such proportion the share of their parent or parents who would be entitled to receive the same if said estate was to be divided between them, if living; and after the death of my last surviving grandchild, it is my will, and I hereby direct, that my whole estate shall go to and be equally divided between my great-grandchildren, or the descendants of said great-grandchildren. Each great-grandchild is to have an equal share, and the descendants of great-grandchildren are to take the share the parent or ancestor, being a great-grandchild, would have had if the partition had been made among great-grandchildren only."

It is claimed that the fifth clause of the will creates a perpetuity in violation, of section 2360 of the Kentucky Statutes, which reads as follows:

"The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter."

The Circuit Court held the trust violated the statute, *supra;* hence this appeal.

Levi Tyler left no other heirs than the descendants of Henry S. and Rebecca Tyler. At the time of the death of Levi Tyler, his son Henry S. Tyler was 46 years of age, and his wife Rebecca was of the same age. Henry S. Tyler, the son, died intestate in 1883; his wife Rebecca died intestate in 1894.

In 1861 when Levi Tyler died, his son Henry S. Tyler had five children living, namely; Isaac H. Tyler, Virginia Tyler Robinson, Levi Tyler, Henry S. Tyler and Ella Tyler Bond.

Henry S. Tyler and Rebecca Tyler his wife, had no children, however, born after the death of Levi Tyler in 1861.

Isaac H. Tyler, the grand-son, died in 1883, leaving a widow, Jennie O. Tyler and six children; Owen Tyler, Isaac H. Tyler, Mary Tyler Mockridge, Rebecca Tyler

Smyser, Jennie Tyler Messick, and S. Gwathmey Tyler, now deceased, who left an infant child of the same name.

The granddaughter, Virginia Tyler Robinson, has one child living, Eliza Robinson Coleman.

The grandson, Levi Tyler, died in 1889, leaving a widow, Maria L. Tyler, and two children, Annie Tyler Fairleigh and Henry S. Tyler.

Henry S. Tyler, the grandson, died January 14, 1896, leaving a widow who has since died, and two children, John Tyler and Nancy Tyler Fraser-Campbell.

The granddaughter, Ella Tyler Bond, is the widow of Louis H. Bond, and the mother of four children, Louis H. Bond, Henrietta Bond Winston, Joseph Bond and Isaac T. Bond.

The testator, Levi Tyler, has had fifteen great-grandchildren, fourteen of whom are now living, while the deceased great-grandchild, S. Gwathmey Tyler, is survived by a widow and infant child.

It will be seen that the fifth clause of the will attempts to tie up the estate in trust until the death of the last surviving grandchild of the testator; a result, it is claimed, that would be in violation of the statute, above quoted.

While the rule denouncing perpetuities has been in the form of a statute only since 1852, it was a doctrine well known and well established under the common law, and in force in Kentucky prior to the enactment of the statute of 1852. Morris' Trustees v. Howe's Heirs (1826) 4 T. B. M., 201; Brashear v. Macey (1829), 3 J. J. M., 91; 2 Washburn on Real Prop., 5th. Ed., 739.

It will be noticed, in the case at bar, that the testator devised his estate in trust, (1) for the lives of his son, Henry S. Tyler and Rebecca his wife, and after the death of the survivor of them, (2) the income thereafter to be paid to the grandchildren of the testator during their lives; and when the last grandchild should have died, (3) the estate was to be divided in fee among the great-grandchildren, *per capita.*

The rule with respect to perpetuities is easily ascertainable from a long line of uniform decisions by this court.

In Brown v. The Columbia Finance & Trust Co., 123 Ky., 781, the court said:

"Under this statute, and under the rule against the creation of perpetuities, the validity of any future estate

depends upon the certainty of its vesting within the prescribed period, and this certainty must exist at the time. of the creation of the estate. It follows that the estate will be void when this certainty does not exist at the time of its creation, although subsequent events so happen that the estate could vest after that period. It is immaterial whether Mrs. Preston had children born after her father's death. The fact remains that at his death, Mrs. Preston being alive, it was possible that she might have had children born alive thereafter who could have survived her, and who would have taken as members of the class represented by her children. Such after-born child, would, therefore, have been one of the persons included in Wickliffe's devise. * * * To uphold the construction of the will contended for by appellee, and given to it by the circuit court, would be to hold an estate could be created by a will, taking effect at the death of the testator in behalf of one not then in existence for his life, then to his children for life, with remainder to the latter's children.''

In U. S. F. & G. Co. v. Douglas, 134 Ky., 385, the court said:

''The rule in question is that an estate in remainder must not be created to take effect beyond the end of a life or lives in being and 21 years and 10 months thereafter. To be valid, the remainder must of necessity vest within the above-named period. If there is left any room for uncertainty or doubt that it will do so, the devise creating it is void.''

In Beall v. Wilson, 146 Ky., 649, the rule was again repeated, as follows:

''We, therefore conclude that the testator intended the devise over to take effect at any time after the death of his daughter upon the death of the grandchildren without issue, and as she might have had other children, this limitation over was for more than a life or lives in being and twenty-one years and ten months thereafter.·

In applying the rule against perpetuities it is an invariable rule that regard is to be had for possible and not merely to actual events; that is, to render future estates valid they must be so limited that in every possible contingency they will vest within the statutory period. Men and women are presumed capable of having children as long as they live. By the will the property was placed in trust for the daughter for life, with re-

mainder to her children, the estate opening up to after-born children, if any, as they came into existence. The interest of the grandchildren under the will is vested no less than the interest of the daughter.''

It is unnecessary to quote further authority upon this subject. We need only refer to Ludwig v. Combs, 1 Met., 128; Stevens v. Stevens, 21 Ky. L. R., 1315, 54 S. W., 835; Coleman v. Coleman, 23 Ky. L. R., 1476, 65 S. W., 832; Johnson's Trustee v. Johnson, 25 Ky. L. R., 2119; Brumley v. Brumley, 28 Ky. L. R., 231, 89 S. W., 182; Hussey v. Sargent, 116 Ky., 69; Saulsberry v. Saulsberry, 140 Ky., 608; and Miller v. Miller, 151 Ky., 563, as fully sustaining the rule above announced.

This wise policy of the law which thus restricts the power of the owner of property to prevent its alienation beyond a reasonable period, is the result of long experience and has become firmly rooted in the jurisprudence of both England and the several States of the Union.

This court, speaking through Chief Justice Boyle, gave its express approval to the rule as early as 1826, in Morris' Trustees v. Howe's Heirs, 4 T. B. Mon., 199, where it is said:

''Naturally, no man has a power of directing to whom or in what manner his estate shall pass after his death, for when he ceases to be, his power necessarily ceases with him. His power, therefore, in this respect must depend upon the positive institutions of society. To stimulate to industry and economy, and to enable parents to exert a beneficial influence over their children and make such arrangements as may suit the exigencies of their families, the law of this country as well as that of most other civilized nations, has given to every one of competent capacity, the power of directing by will to whom his estate shall pass. But although it is reasonable that a man should have power of thus disposing of his estate after his death, it is obviously as reasonable that he should not have the power of directing its disposition for all time to come; and the law, while, for beneficial purposes, it concedes to every one the power of directing to whom his estate after his death shall go, has at the same time been careful that this power should not be abused.

''To prevent, therefore, estates from being locked up forever from commercial and social purposes, it has forbidden perpetuities, and fixed a period beyond which no one is allowed to direct how his estate shall devolve.

That period is for life, or lives in being, and twenty-one years and a few months, and the rule is the same in this country, in relation both to real and personal estate. A man can not, therefore, devise over an estate to take effect after that period, and if he does so the limitation over will be void, and the person who takes the preceding estate will have the fee simple or absolute property in the estate devised.''

The test, therefore, for determining the existence of a perpetuity, is not whether the event or contingency named upon which the estate devised may vest in the ultimate takers does happen or may happen, but whether it is possible that it might not happen within that time. If it is possible that the event or contingency upon which the estate will finally vest may not happen within the limit prescribed by the rule against perpetuities, the instrument is void, or at least so much thereof is void as relates to this remote event or contingency. In other words, a possible perpetuity is a perpetuity denounced by the statute.

The question therefore, is this: Does the fifth clause of the will create a perpetuity under the rule above announced, bearing in mind the fact that no grandchild of the testator was born after his death? All the grandchildren were living at the time of the testator's death, although they are not named in the will, except as a class.

The fifth clause expressly states that the estate was to be held in trust until the death of the testator's last surviving grandchild, and was then to be divided equally between his great-grandchildren, or their descendants. It did not provide that the estate should be held in trust until the death of his last grandchild that was living in 1861 when the testator died, but the term "grandchild" is used unqualifiedly; and if it would embrace grandchildren that might be born to Henry S. and Rebecca Tyler after the death of the testator, it creates a perpetuity denounced by the statute, above quoted, since it might possibly carry the trust beyond the period covered by the life or lives of the living grandchildren, and twenty-one years and ten months thereafter.

And by referring back to the fourth clause of the will, it will be noticed that the testator provided for the support of his daughter-in-law, Rebecca A. Tyler, and her children then in being *or thereafter to be born*, thus showing that the testator had in mind and intended to include

within the benefits of his will not only his grandchildren then living, but any that should thereafter be born.

The testator did not make, nor did he attempt to make any distinction between the grandchildren then living, or any children that might thereafter be born to his son Henry. Naturally, the testator wanted all his grandchildren, whenever born, to be the beneficiaries of his bounty. The law will not presume that he intended to make a distinction between his offspring.

In Unites States Fidelity & Guaranty Co. v. Douglas' Trustee, 134 Ky.; 389, we said:

"This court has uniformly held that the word 'grandchildren' means not only the offspring of children in being at the time of the death of the testator, but any that may be thereafter born. This is the only just, reasonable, and fair rule of construction. A child of a son or daughter is not less a grandchild because born after the death of its grandparent, and common justice would require that after-born children should be entitled to participate in the residium of the estate unless there is some provision in the will evidencing clearly an intention on the part of the testator that they should not be permitted to do so."

This rule of construction is thoroughly established in this jurisdiction.

Nor does the fact that Henry S. Tyler and Rebecca Tyler had no children born after the death of the testator affect the question. That it so happened is wholly immaterial, since the fact remains that at the death of Levi Tyler, his son Henry S. and his daughter-in-law Rebecca being then alive, it was possible that they might have had children born alive, who might have survived their parents, in which case they would have been included as devisees under the will. The possibility makes a perpetuity.

Furthermore, the question is not affected by the fact that Henry S. Tyler and Rebecca Tyler were both 46 years of age at the time of the testator's death, and that she may have been beyond the child-bearing age and he beyond the age of procreation. The law has never fixed a period in the life of a woman beyond which she may not bear children. On the contrary, it has been repeatedly declared that no age limit will be fixed beyond which the court would feel justified in declaring that a woman would not or could not give birth to a child; nor have the

courts fixed a period beyond which a man could be said to be incapable of procreation, if indeed there is such a period. In other words, the law which looks with favor upon a stable rule that is applicable to all cases of the same kind, will not leave the question of the possibility of issue one to be determined by the facts of a particular case, but conclusively presumes that a woman is capable of bearing, and that a man is capable of begetting, children until they die, regardless of their ages.

This rule has been uniformly followed in this State and was re-announced in the late case of U. S. F. & G. Co. v. Douglas's Trustee, 134 Ky., 387. In that case it was contended that the testator's daughter, being 55 years of age at the time of the testator's death, was beyond the child-bearing period, and that effect should be given to that fact. The court, however, adhered to its uniform rule that there was a conclusive legal presumption that persons are always capable of bearing and begetting children, saying:

"It is true that at that time she was 55 years of age, but this court has never fixed a period in a woman's life beyond which she might not have children, and, in fact, it was specifically declared in Brown v. Columbia Trust Co., that no age limit would be fixed beyond which this court would feel justified in declaring that a woman would not or could not give birth to a child; hence, the fact that the testator's daughter at that time was fifty-five years of age does not warrant the conclusion that her father was, in the draft of his will, intending to declare that she should not thereafter have children, or that if such were born to her they would not be the recipients of any part of his bounty."

It appearing, therefore, that the fifth clause of the will embraced within its terms any children of Henry S. Tyler and Rebecca Tyler who might have been born after the death of the testator in 1861, and that the law conclusively presumes that Henry S. Tyler and Rebecca Tyler could have had children born subsequent to that date, it necessarily follows that there was a possibility of the existence of a fact which, under the statute against perpetuities, would defeat the devise to the grandchildren, since a devise for life to after-born grandchildren might have extended the trust beyond the period covered by the life or lives in being in 1861, plus 21 years and ten months thereafter; and, as above shown, a possible perpetuity is, in law, a perpetuity denounced by the statute.

The trust being void, this question arises: Who takes the fee in the estate, the grandchildren of the testator or his great-grandchildren?

It may be said the former rule in this State was, that when a trust was set aside as void under the statute against perpetuities, the estate descended in fee as if there had been no will. According to the more recent decisions, however, this rule has been, to some extent, modified, and it may be now said that when a trust of this character is set aside, the intention of the testator, as expressed in the will, will be followed as far as possible in the division of the estate; and that when the trust can, by reason of the inhibition of the statute, be carried no further, it will then be divided between those entitled thereto, under the law. In other words, the modern rule permits the estate to progress under the will up to the point where the rule against perpetuities begins to operate and creates a fee in the last person who, under the statute, is authorized to take it.   U. S. F. & G. Co. v. Douglas's Trustee, 134 Ky., 393; Beall v. Wilson, 146 Ky., 651; Miller v. Miller, 151 Ky., 565.

It is, therefore, clear that Henry S. Tyler and Rebecca his wife, took a life estate, with remainder in fee to their children, whether in being at the death of the testator, or born thereafter; and the provision for the benefit of the great-grandchildren, being in contravention of the statute against perpetuities, is void and of no effect.

It so happens, however, in the present case that even if the estate is carried, under the will, as far as it is legally possible, and be then divided, nevertheless the estate descends to those who are entitled to the fee as if it followed the statutes of descent and distribution. The case now stands as if no will had been written, because the law is, that when a person dies leaving a will which devises property according to the statutes of descent and distribution, the person taking the property takes under the statute or the law, and not under the will. The result is that whether the estate progresses under the will as far as it is legally possible and is then divided, or whether it is held the will is void and the division of the estate is made as if there were no will, the division is precisely the same.

Under the circumstances of this case, it is wholly immaterial which rule is adopted in making the division. If it be said that the testator Levi Tyler died as if he

had left no will, then the property descended to his son Henry S. Tyler and his wife; and since both of them died intestate, the property passed in fee to their children. If, on the other hand, the attempt is made to carry the estate under the will as far as it is legally possible, then it is likewise found that the estate must be divided among the children of Henry S. Tyler and his wife, who necessarily take the fee, because there can be no trust as to their children.

Moreover, a division at this time of the estate between the great-grandchildren upon the theory that they take the fee under the will, would nullify the plain intention of the testator to provide for all of his grandchildren during their lives; for, if the estate should go to the great-grandchildren it would necessarily deprive Mrs. Robinson and Mrs. Bond, who are the grandchildren of the testator, of all interest in the estate. Such a division would also defeat the widows of Levi Tyler and Isaac H. Tyler of their dower rights. Such a result was certainly never intended by the testator.

We think it plain beyond a question that upon the death of Levi Tyler, his son Henry S. Tyler took a life estate only, under the will of his father, with a vested fee in remainder in the children of Henry S. Tyler.

The estate will therefore be divided between the living grandchildren of the testator, and the descendants of deceased grandchildren, the latter taking *per stirpes,* and not *per capita* under the will.

The judgment of the circuit court being in accord with these views, it is affirmed.