## Curd's Trustee v. Curd, et al.

(Decided March 11, 1915.)

### Appeal from Logan Circuit Court.

1. Perpetuities—Estates—Section 2360, Kentucky Statutes.—To prevent estates from being locked up forever from commercial and social purposes, Section 2360 of the Kentucky Statutes has forbidden perpetuities, and fixed a period during the continuance of a life or lives in being at the creation of the estate and twenty-one years and ten months thereafter, beyond which no one is allowed to direct how his estate shall devolve; and this rule applies equally to real and personal estate.

2. Perpetuities—Test for Determining Existence.—The test for determining the existence of a perpetuity, is not whether the event or contingency named upon which the estate devised may vest in the ultimate takers does happen or may happen, but whether it is possible that it might not happen within that time. If it is possible that the event or contingency upon which the estate will finally vest may not happen within the limit prescribed by the rule against perpetuities, so much of the instrument is void as relates to this remote event or contingency. A possible perpetuity is a perpetuity denounced by the statute.

3. Wills—Construction—Attempt to Create Perpetuity.—Where a testator devised his property to his wife for life, with remainder in trust for the testator's two daughters for life, and in case either daughter should die without leaving a child or children living, or should such child or children be living but die without issue, then in either case the estate should go to the testator's other descendants; and the testator had a daughter and four grandchildren living at the time of his death, a fifth grandchild having been born after the death of the testator, there was an attempt to create a perpetuity in violation of Section 2360 of the Kentucky Statutes, and the grandchildren of the testator took the property absolutely.

4. Wills—Trusts—Perpetuities.—When a trust is set aside upon the ground that it violates the statute against perpetuities, the intention of the testator, as expressed in the will, will be followed as far as possible in the division of the estate; and when the

trust can, by reason of the inhibition of the statute, be carried no further, the estate will then be divided among those entitled thereto under the law, and not under the will.

5. Wills—Construction—Trusts.—Where a testator devised his estate in trust to his daughter Mary for life, with remainder to her children; and further provided that if Mary should die without a child or children living, or if such child or children should die without issue, then the estate was to go to their collateral kindred, and Mary died leaving children living and grandchildren living, who are the children of a deceased child of Mary, the contingency upon which the estate could have been defeated never happened, and cannot hereafter happen, and the estate goes in fee to the living children and grandchildren of Mary.

W. F. BROWDER for appellant.

C. U. McELROY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Affirming.

This action was brought by the children and grandchildren of Mary C. Curd for a construction of the will of their grandfather, Richard W. Courts, deceased.

Mr. Courts made his will in 1861, and to this will he added a codicil in 1871. He died in Russellville, Ky., the place of his domicile, in 1874; and, on September 26th, 1874, his will was duly admitted to probate by the Logan County Court. He left a large estate, consisting almost entirely of personalty.

Richard W. Courts was survived by his widow, Emily A. Courts, by four sons, and by Mary C. Curd and Fannie E. Morton, his two daughters, all of said children being adults at the time of the death of the testator.

The first and second clauses of the will are unimportant here. By the third clause the testator gave his entire estate to his widow, Emily A. Courts, so long as she should remain unmarried; the remainder, and its increase, after the widow's death or marriage, to be disposed of as the law directs, making each child as nearly equal as possible.

The fourth clause, which we are called upon to construe, reads as follows:

"If my wife wishes to make advance to any of my children she may do so, by the advice and written consent —————————, and if any such advance be made to either of my two daughters, it is my will that said

advance be placed in the hands of a trustee (who is to be selected by my son Henry) and by said trustee vested in some good securities or stock as him and my son Henry may agree on, and the interest arising therefrom (after paying expenses) be paid over to my daughter, or each of them, for their own use, as collected, but to be in no way subject to the control or debts of the husband of either; and at the death of wife, all the interest of my said daughters is to pass into the hands of said trustee as stated above, for the benefit of my two daughters, each separate, and their children after them, and should either or both of my daughters die without a child or children living, or should such child or children be living but all (of either daughter) die without issue, then in either case, said trustee will return that original share, together with any unexpended interest to my estate for division among my other children or their descendants (if any be dec'd) as the original estate.''

It will be readily seen that the will bears unmistakable internal evidence of having been written by the testator, or by some draftsman other than a skillful lawyer.

At the time the will was written in June, 1861, the testator's daughter, Mary C. Curd, was in being, but none of her children had then been born. When Mr. Courts died in 1874, his daughter, Mrs. Curd, had four living children. One of her children, the appellee, Mrs. M. Genevieve Brown, was born in 1878, about four years after the death of her grandfather Courts.

One of the daughters of Mrs. Curd married D. B. Clarke, and died in 1895, leaving two children, the appellees, Presley K. Clarke and Angeline Clarke Russell, both of whom were born many years after the death of their grandfather Courts.

The testator's widow, Emily, died in 1885. No administration was granted upon the estate of the testator until after the death of his widow; when, on December 1st, 1885, the appellant, the Fidelity & Columbia Trust Company (then known as the Fidelity Trust & Safety Vault Company), of Louisville, was appointed administrator with the will annexed of the estate of Richard W. Courts. On the same day the appellant was appointed administrator of the estate of the widow, Emily A. Courts, both appointments having been made by the Logan County Court.

At the January term, 1886, of the Logan Circuit Court, W. F. Barclay, who had theretofore acted as trustee for the testator's two daughters, Mary C. Curd and Fannie E. Morton, resigned as such trustee; whereupon the appellant (then known as the Fidelity Trust & Safety Vault Company) was appointed trustee in the place of Barclay. The appellant qualified and has administered the trust from that date up to the present time, in strict accordance with the terms of the will and the requirements of law.

Mary C. Curd died on March 7th, 1914, and shortly thereafter the appellees, who are her children and grandchildren, applied to the appellant trust company for a settlement of the estate which it had been administering for 28 years, and demanded that the trustee deliver to them, as the children of the beneficiary, Mary C. Curd, the trust fund then held by it, and a deed conveying to them jointly a certain specified piece of real estate in Bowling Green, which the trustee held as a part of the trust estate.

In view of the unusual and uncertain provisions of the fourth clause of the will, the trustee entertained serious doubts as to its duty in the premises; and, while not refusing to pay over the trust fund to the children and grandchildren of Mrs. Curd, it suggested to the appellees that they bring this friendly suit for a construction of the will for the protection of all parties concerned. This suit was accordingly filed, the petition and the answer setting up the facts as above narrated. Upon a hearing of the case, the chancellor held that upon the death of Mary C. Curd her children and grandchildren became entitled to the trust estate, and directed the trustee to turn over the personalty to them, and to make a deed conveying to them the legal title of the house and lot in Bowling Green.

From that judgment the trustee prosecutes this appeal, for the purpose of finally determining its rights and duties under the will.

It is claimed by counsel for the appellees that the fourth clause of the will created a perpetuity in violation of Section 2360 of the Kentucky Statutes, which reads as follows:

"The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or

lives in being at the creation of the estate, and twenty-one years and ten months thereafter."

It will be remembered that by the third clause of the will the testator directed that upon the death or marriage of his widow, his estate should be disposed of under the statutes of descent and distribution of Kentucky; but that by the fourth clause of the will he excepted from the operation of this bequest all that part of his estate which would otherwise have passed absolutely to his two daughters, Mary C. Curd and Fannie E. Morton.

He not only undertook to create, and did create, a trust as to the shares of these two daughters, giving to each of them one-fifth of his estate, to be held in trust for their exclusive use and benefit, but by the fourth clause of his will, the testator provided that all the property acquired by his daughter, Mary C. Curd, under his will should, upon her death, pass to her children, unless she should die without a living child or children, and in the further event said daughter should leave living a child or children and such child or children should all die without issue, said share should be returned to his estate for distribution among his other children, or their descendants. The time at which the estate was to finally vest in the great-grandchildren of the testator was thus deferred until the death of all the testator's grandchildren.

But at the time of the death of Mary C. Curd, on December 7th, 1914, she left surviving her a son, the appellee, C. W. Curd, who has never had any child; the appellee, Nannie J. Green, who has never had any child; a daughter, M. Genevieve Brown; another daughter, Dallie C. Taylor, and two grandchildren, Presley K. Clarke and Angeline C. Russell, who are the children of Emma Curd Clarke, deceased, who was a daughter of Mary C. Curd. All of these children and grandchildren are parties to this appeal. The other children of Mrs. Curd are all married and have children.

There have been many cases in this court, particularly during the last twenty years, construing and applying the Kentucky Statute against perpetuities; but in none of them is the doctrine and the reason therefor better stated than in the opinion of Chief Justice Boyle, in the early case of Moore's Trustee v. Howe's Heirs, 4 T. B. Mon., 199, where he said:

"Naturally, no man has a power of directing to whom or in what manner his estate shall pass after his death, for when he ceases to be, his power necessarily ceases with him. His power, therefore, in this respect, must depend upon the positive institutions of society. To stimulate to industry and economy, and to enable parents to exert a beneficial influence over their children and make such arrangements as may suit the exigencies of their families, the law of this country, as well as that of most other civilized nations, has given to every one of competent capacity the power of directing by will to whom his estate shall pass. But, although it is reasonable that a man should have power of thus disposing of his estate after his death, it is obviously as reasonable that he should not have the power of directing its disposition for all time to come; and the law, while, for beneficial purposes, it concedes to every one the power of directing to whom his estate after his death shall go, has at the same time been careful that this-power should not be abused.

"To prevent, therefore, estates from being locked up forever from commercial and social purposes, it has forbidden perpetuities, and fixed a period beyond which no one is allowed to direct how his estate shall devolve. That period is for life, or lives in being, and twenty-one years and a few months, and the rule is the same in this country, in relation both to real and personal estate. A man cannot, therefore, devise over an estate to take effect after that period, and if he does so, the limitation over will be void, and the person who takes the preceding estate will have the fee simple or absolute property in the estate devised."

The principle thus announced has been recognized by this court in a long line of decisions, without any modification or variation, for more than a century; and, as is well known, the doctrine is equally applicable to personalty as to real estate.

See also Carter's Trustee v. Gettys, 138 Ky., 842; Beall v. Wilson, 146 Ky., 649; Tyler v. Fidelity & Columbia Trust Co., 158 Ky., 280, and the cases there cited.

A reading of the fourth clause under consideration leaves no doubt that it attempted to create a perpetuity forbidden by the statute. It attempted to postpone the final vesting of the fee until the death of the testator's unborn grandchildren, if any there should be;

and the possibility that there might be after-born grandchildren constituted a perpetuity in law.

In Tyler v. Fidelity & Columbia Trust Co., *supra,* the court said:

"The test, therefore, for determining the existence of a perpetuity is not whether the event or contingency named upon which the estate devised may vest in the ultimate takers does happen or may happen, but whether it is possible that it might not happen within that time. If it is possible that the event or contingency upon which the estate will finally vest may not happen within the limit prescribed by the rule against perpetuities, the instrument is void, or at least so much thereof is void as relates to this remote event or contingency. In other words, a possible perpetuity is a perpetuity denounced by the statute."

The lives in being at the date of the testator's death were his wife, daughter, Mary C. Curd, and four of her children, the fifth child having been born after the testator's death. The possibility that the child born after the testator's death might survive her mother more than twenty-one years and ten months made the attempt to tie up the estate until the death of the last survivor nugatory; and that being true, the fee simple title to the property in the hands of the trustee vested in appellees upon the death of their mother in 1914. Tyler v. Fidelity & Columbia Trust Co., 158 Ky., 289. To hold otherwise would be to say that the testator could give an estate to his daughter for life, and after her death give it to her children whenever born for life; and, at their death, which might not occur for fifty years after the will was probated, the estate should go back to the testator's estate, provided all the grandchildren had died without issue. If they should die with issue the will is silent as to where the estate should then go.

It will be seen that the testator unmistakably intended to postpone a final vesting of the estate in fee simple to a period beyond and longer than the life or lives of persons then in being, and twenty-one years and ten months thereafter; and the trust was, for that reason, violative of the statute above quoted.

Independent, however, of the statute against perpetuities, the conditions upon which Mrs. Curd's part of the estate should revert to the testator's estate never happened, and never can happen. It was provided that,

in case Mrs. Curd, the testator's daughter, should die without a child or children living, the estate should revert. But, instead of dying without a child, she died leaving four children and two grandchildren. In the second place, it was further provided that, even if Mrs. Curd should die leaving a child or children, still, if *all* of such children should die without issue, then the estate should revert. But this contingency never happened, and never can happen, because *all* of Mrs. Curd's children cannot die without issue, since Mrs. Clarke, one of Mrs. Curd's children, is dead, and left two children surviving her. So, in any event, it is impossible for the contingency to happen upon which the reversion was made to depend.

In either view of the case, the judgment of the chancellor was right, and it is affirmed.