## Maynard, et al. v. Maynard, et al.

(Decided December 21, 1917).

### Appeal from Pike Circuit Court.

1. Appeal and Error—Cross-Appeal—Review.—Where the circuit court dismissed the petition and failed to pass upon the counterclaim, a cross-appeal by the defendant based upon his counterclaim will not be reviewed by the Court of Appeals, since there is no decision upon that question for the court to review.

2. Appeal and Error—Proof.—Proof unsupported by an issue made by the pleadings will be ignored.

3. Adverse Possession—Parol Contract—Title—Validity.—When one enters upon land under a parol contract, claiming it as his own and holding it adversely to all the world for fifteen years, he acquires a valid title thereto and cannot be dispossessed for want of a paper title.

D. C. STOWERS and F. W. STOWERS for appellants.

J. S. CLINE and CHILDERS & CHILDERS for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming on the original and dismissing the cross appeal.

D. A. Maynard and Jane, his wife, were the parents of James Maynard, Jeff Maynard, and eight other chil-

dren. By deed dated January 21, 1888, D. A. Maynard and his wife conveyed to their son James a tract of land in Pike county containing 256 acres. The recited consideration for the deed was natural love and affection and "'$350.00 in hand paid." The deed, however, retained a lien upon the property as security for the payment of the unpaid purchase money. At the time the deed was executed James Maynard was living upon the land therein conveyed and has ever since continued to live upon it, or has retained possession thereof through his tenants.

On May 29, 1913, D. A. Maynard and Jane, his wife, filed this action against their son James alleging the conveyance made to him in 1888 and a retention of the lien to secure the payment of the purchase money which had not been paid. The petition further alleged that there was a parol agreement made at the time of the conveyance in 1888, whereby James was to reconvey one-half of the land to his parents at any time they should ask it, and that James held the land under an express trust to do so; that subsequently, in 1896, by a parol contract, they sold the land to James for $550.00, and that James executed to his mother a purchase money note for $550.00, payable March 1st, following. The petition further alleged that James was entitled to two credits upon the note, one for $100.00 in cash paid in 1898, and another for $75.00, the agreed value of a grey mare, and paid in 1903.

The petition asked judgment for the debt of $550.00, with interest, and the enforcement of the lien.

In an amended petition filed March 7, 1914, it is alleged that the recited consideration of $350.00 in the deed of 1888 was untrue and that nothing was then paid upon the purchase; and that James agreed to reconvey to his parents one-half of the tract, amounting to 128 acres. It repeated the conditions of the sale in 1896 to James and his agreement to pay his mother $550.00, as evidenced by the note of that date, and further alleged that the deed of 1888 failed to show the agreement to reconvey through a mistake in the drawing of the deed.

On April 4, 1914, James Maynard filed his answer, containing (1) a traverse of the petition; (2) a plea of *non est factum* and an allegation that the credits aggregating $175.00 alleged to have been paid in 1898 and 1903, respectively, were not made as payments upon the note, and were not credited thereon with his consent, but that the credits were made upon the note by the plaintiffs to

defeat the statute of limitations; (3) a plea of the ten years statute of limitation; (4) a plea of the fifteen years statute of limitation; and (5) a counterclaim showing improvements made by him upon the land amounting to $2,000.00 in value, for which he prayed judgment in case he should be ousted.

A reply was filed on the same day traversing the allegations of the answer and counterclaim and asking that the defendant be charged with rents. In the meantime, D. A. Maynard, the father, had died on December 9, 1913, and the action has been revived in the name of his real representatives.

On April 14th, Mrs. James Maynard, the mother, gave her deposition and took the deposition of her other witnesses in support of her case; and on July 24th, the defendant, James Maynard, gave his deposition and took other depositions in support of his defense.

Subsequently, on September 14, 1914, the defendant, James Maynard, over the objection of the plaintiffs, filed an amended answer, counterclaim and cross-petition, in which he alleged that he had not agreed to reconvey one-half of the 256 acres to his parents, but that he had agreed to convey the one-half thereof to his brother, Jeff Maynard; that in 1891 he had bought Jeff's one-half interest for $400.00, but that Jeff had died in November, 1891, before a conveyance was made, leaving a widow and one child, Virgie Maynard; that Jeff, on his deathbed, directed James to pay his widow and his daughter Virgie the $400.00, his father and mother agreeing thereto; and that James was willing to pay said sum to Virgie Maynard, her mother having waived all claim thereto.

The amended answer further alleged that his father, D. A. Maynard, had gotten the $175.00 from the defendant to be used in sending Jeff's daughter, Virgie, to school; but that D. A. Maynard had not so used it; that James had paid it to his father for that purpose and as a credit on his debt to Virgie's father; and he prayed judgment against his father's heirs and representatives for that sum.

At the same time, Virgie Maynard, who had up to that time been a plaintiff, filed her pleading, stating substantially the same facts concerning the sale by her father Jeff that had been stated in the answer of James Maynard; and she traversed the allegations of the petition and interposed a plea of the statute of frauds against the enforcement of the alleged parol agreement between D.

A. and James Maynard, as set out in the original and amended petitions.

The reply in turn interposed the statute of frauds as a bar to the enforcement of the alleged agreement of James to convey one-half of the land to his brother Jeff. It will thus be seen that the contest is over only one-half of the land conveyed by the deed of 1888, and that James Maynard's title to the other half is not questioned, except to the extent of plaintiffs' attempt to sell it for the purpose of paying the purchase money.

A large amount of proof was taken upon the issues thus made, and the chancellor entered a judgment declaring (1) that D. A. Maynard and his wife Jane executed the deed of 1888 with the intention and agreement with their son James that he would convey one-half of it to his brother, Jeff Maynard, upon his arriving at the age of 21 years; (2) that as soon as Jeff reached his majority and just before he died, he by parol, sold his half interest in the land to his brother James for $400.00, no part of which had ever been paid; (3) that the plaintiffs' petition be dismissed with costs; (4) and that Virgie Maynard recover of James Maynard $400.00, and to secure the payment thereof she was given a lien upon the land. The judgment, however, did not dispose of James Maynard's cross-petition praying judgment against his father's estate for the $175.00 which James claimed to have furnished his father for the purpose of educating Virgie.

The plaintiffs appealed and the defendant, James Maynard, has prosecuted a cross-appeal in this court asking that the judgment of the lower court be reversed because it ignored his counterclaim. The cross-appeal may be summarily dismissed by saying that since the counterclaim was not passed upon by the circuit court there is no decision upon that question for this court to review.

The proof is wide in its range, indefinite in its character, and largely incompetent. It is shown, however, by the testimony of Mrs. Jane Maynard that she and her husband conveyed the land in question to their son James in 1888 for the purpose of defeating an anticipated slander suit, which, however, was never filed. And, it is contended by the appellees that the plaintiffs will not be granted any relief against their own fraud. This defense, however, was not made by the pleadings and can not now be considered for that reason. While the proof upon that subject is clear, it is incompetent and ineffectual in the absence of an issue.

The appellee, James Maynard, supported his defense mainly but not entirely by his own testimony; and his mother, Mrs. Janes Maynard, admitted that it was the purpose of herself and her husband in making the deed in 1888 that Jeff should have one-half of the land that was conveyed to James. To this extent she corroborates James. James further testified that he and his brother Jeff paid full consideration to their father for the conveyance of 1888 by working for him on a new place which he had bought lower down the creek so as to enable him to pay for that place; that they did so work for him until the place was paid for; and that James then moved upon the land in question and under the agreement made with his father that the land was to be equally divided between James and Jeff.

Furthermore, the proof shows that James never signed the note for $550.00, but that his father signed James' name to the note and, as he claims, at James' direction. James, however, denied that he authorized his father to sign the note or that he made any agreement that would justify the giving of the note.

In view, however, of the plea of adverse possession of fifteen years by James, which must control the case, the other questions raised are of secondary importance.

The undisputed fact appears that James Maynard took possession of the land in 1888 and has continued ever since to claim it as his own—certainly since the parol agreement by which Jeff sold him his half in 1891. That was more than 21 years before this action was filed; and 25 years elapsed after the deed was made in 1888 conveying the legal title to James, before this action was filed. It is well settled in this jurisdiction that when one enters upon land under a parol contract claiming it as his own and holding it adversely to all the world, including the donor, and maintains his possession for fifteen years, he cannot be dispossessed. Owsley v. Owsley, 117 Ky. 47; Blanton v. Howard, 148 Ky. 553; Robinson v. Huffman, 113 S. W. 458; Delano v. Air, 157 Ky. 370; Ingram v. Tucker, 151 Ky. 827.

Furthermore, if the plea of limitation did not require an affirmance of the judgment we would not be disposed, under the greatly conflicting testimony, to disturb the chancellor's findings of fact. Under either view of the case, the judgment will have to be affirmed; and it is so ordered.