## Cahill, et al. v. Pelzer, et al.

(Decided October 3, 1924.)

### Appeal from Campbell Circuit Court.

1.   Process—Where Verified Petition Contained Grounds for Constructive Service, Separate Affidavit Unnecessary.—Where petition was verified, and contained grounds for constructive service, it took place of affidavit, and separate affidavit stating grounds was unnecessary, under Civil Code of Practice, sections 57, 58, 116.
2.   Process—Sufficient for Plaintiff to State She "Believed" Defendants Absent from State.—Under Civil Code of Practice, sections 57, 58, statement in petition that plaintiff "believed" defendants were absent from state was sufficient to support warning order, though petition, under section 116, was only verified as true "as she verily believes."

3. Wills—Intention Gathered from Entire Language is Polar Star of Construction.—In construction of wills, intention of testator, as gathered from entire language, is polar star by which courts should be guided.

4. Wills—Exception Clause Held to Permit Alienation of Property on Death of One Child.—Will giving widow life estate, and then life estate to testator's children, with remainder to their offspring but providing that children should have no power of sale, "unless in case one of my heirs should die, there and then that property the benefits derived from the same be equally divided over the remaining heirs," permitted alienation of whole property on death of one child of testator.

5. Prepetuities—Restraints Against Alienation Not Favored.—Restraints against alienation are not favored in law.

6. Wills—Qualifications on Restraints Against Alienation, when Ambiguous, Construed to Provide for Entire Removal.—Ambiguous qualifications to restraints against alienation will be construed so as to provide for entire removal of restraints rather than only partial ones.

HOWARD M. BENTON for adult appellants.

E. W. HAWKINS, JR., guardian ad litem, for infant appellants.

L. S. SHEPLER and W. A. BURKAMP for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This equity action is the second effort on the part of some of the devisees of Dennis Cahill, deceased, against the others to procure a decretal sale of the devised land of the testator for the purposes of division among all of them according to the terms of the will. The disposition of the first action will be found in the court's opinion in the cast of Ennen v. Air, etc., 31 Ky. L. R. 1184, and in it the will of the testator was construed to devise to the widow a life estate in the testator's real property and after her death a life estate in his children with the fee in remainder, according to that opinion, "to the offspring of his children, meaning such offspring as would take from them by descent if they should die intestate." At that time all of the children of the testator were living, but whether any of them were married or had children does not appear from the opinion; and the court in the light of the facts as they then existed construed certain language of the will to forbid a sale of the property under the then existing conditions. The language of the will so construed to create a limitation on the right of alienation is, "I request that oldest, soberest and best worthiest be executor and administrator, without bond, be it male

or female, and that they shall have no power to sell any of the property, my wife and children, unless in case one of my heirs should die, there and then that property the benefits derived from the same be equally divided over the remaining heirs." The real estate involved consisted of five parcels in the city of Newport, Kentucky, four of which were improved and the other one wholly unimproved.

In October, 1922, Thomas P. Cahill, one of the children of the testator, died leaving four infant children, and in the meantime others of his children married and had children. Thereafter this action was brought in the Campbell circuit court by the adult devisees against the infant remaindermen, including of course the children of testator's deceased child, all of whom were nonresidents and proceeded against by constructive service, seeking the same relief that was sought in the first case of Ennen v. Air, *supra,* and the court held that the exception clause in the will against the right of alienation reading "unless in case one of my heirs should die, there and then that property the benefits derived from the same be equally divided among the remaining heirs," removed the restraint against alienation and entered a judgment sustaining the prayer of the petition.

The land was sold pursuant to the decree so ordering and the purchasers filed exceptions to the sale upon two grounds, (1), that the affidavit for the warning order was insufficient and for that reason it was void, and (2), that the court construed the will incorrectly. The exceptions were sustained and the sale and order therefor were each set aside and the petition dismissed, but whether upon one or both grounds does not appear in the order. All of the devisees, both adults and infants, prosecute this appeal therefrom. We will dispose of the two grounds in the order named.

1. The petition was verified by the plaintiffs and it contained the grounds for the constructive service which, under numerous opinions of this court, is permissible, since in those opinions it was held that it was not necessary that a separate affidavit stating the grounds should be made. The averments of the verified petition on that subject are, "all of said defendants are infants and non-residents of the state of Kentucky, and, as plaintiffs believe, are now absent therefrom, and their respective residences and postoffice addresses are as follows," etc. The postoffices of the defendants are then set out. The veri-

fication reads: "The plaintiff, Catherine Air, being duly sworn, says that the statements contained in the foregoing petition in equity are true, as she verily believes." It is contended in support of this ground that since in the petition or affidavit the affiant stated in substance that she *believed* the defendants are now absent from the state, and stated in her verification that the allegations of the petition containing the affidavit were true, "as she verily believes," renders the required statement of the absence of the defendants from the state of no force or effect, and left it as if no statement whatever was made as to their absence from the state.

There might be some force in the contention if the *affidavit* and the *verification* did not literally follow the provisions of our Code relating to such matters. As above stated, we have frequently held that a properly verified petition containing the necessary allegations for constructive service, as set out in sections 57 and 58 of the Civil Code, authorizes the issuance of a warning order for the defendant and the appointment of a corresponding attorney for him. One of the grounds stated in subsection 2 of section 57 of the Code upon which a warning order may be obtained is that the defendant is "a nonresident of the state and *believed* to be absent therefrom." (Our italics). And the various subsections of section 58 prescribe who shall make the affidavit under shown conditions and what the affiant shall state, but it is required that any of such affiants shall make oath to one or more of the grounds contained in section 57. It is not claimed but that the essential fact of absence from the state according to *affiant's belief* was improperly stated in the petition, which, if true, it would seem to follow that if the petition was properly verified, then under the frequently announced rule, *supra,* this ground of exception would be without merit.

Section 116 of the Code says: "Every pleading, which this Code requires to be written, must be verified by an affidavit to the effect that the affiant *believes* that the pleadings are true" (our italics), with certain enumerated exceptions, none of which have any relevancy to this case. We, therefore, see that the verification or affidavit which that section requires to be made to the petition was literally complied with because all it requires is "that the affiant *believes* that the statements of the pleading are true." (Our italics.) We then have the prescribed statement in the petition as to the affidavit for

warning order, and literally stated in the language of
the Code section, and we have that pleading verified
strictly according to section 116 of the Code. If the fact
necessary to procure the warning order was one which
the provisions of section 57 of the Code required to be
absolutely stated, but instead of doing so the pleader had
only stated it as a fact "as he believed," or in any man-
ner made the absolute truth of the fact depend upon his
belief, then there would be some force in counsel's con-
tention; and it was that character of absolute statement
that was involved in the cases upon which he relies. Il-
lustrating our meaning, subsection 2 of section 57 re-
ferred to requires that before a warning order may issue
upon the ground of nonresidency, it must appear by affi-
davit that the defendant is "a nonresident of this state,"
and in addition thereto "believed to be absent there-
from." The requirement as to nonresidency is absolute,
but the one seeking the warning order may state his
*belief* as to the other necessary requisite, *i. e.*, absence
from the state. With the pleading containing the state-
ment as set forth in the Code, and with a verification of it
in the very language of its section 116, we are unable to
sustain this ground of exception, and the difference
pointed out renders the cases relied on inapplicable. We,
therefore, conclude that the warning order was suffi-
cient and that the defendants, who were proceeded
against as nonresidents, were properly brought before
the court for adjudication of the questions involved.

2. In determining this ground it should first be re-
membered that in the construction of wills the intention
of the testator as gathered from the entire language he
employed is the polar star by which courts should be
guided. With that fundamental rule in mind, our task
is to determine the intention, purpose and meaning of the
testator by incorporating in his will the exception clause
against alienation quoted above. Undoubtedly he meant
something and intended in some way to modify or qualify
the prior absolute restraint against alienation, since he
is not to be presumed as employing that qualifying lan-
guage to no purpose. We must admit that the language
containing the qualification is somewhat ambiguous and
that it, like the whole will, as stated in the Ennen opinion,
is awkwardly and ungrammatically expressed, and be-
cause of which, as is also stated in that opinion, some-
what confuses his intention. An analysis of the qualifi-
cation, in the light of the other provisions of the will,

would no doubt furnish us assistance in arriving at his meaning and purpose. The language is, "Unless in case one of my heirs should die, there and then that property the benefits derived from the same be equally divided over the remaining heirs." It is the contention of the appellees (the purchasers) that that language provided upon the death of one of the testator's heirs that only his portion should be divided "over (among) the remaining heirs," and that the power to sell the whole property for division, upon the happening of that event, was in no manner thereby provided for. In the light of the many awkward words and expressions in the will, we might, according to a well founded and recognized rule, supply for the word "that," just preceding the word "property" in that clause, the article "the," so that the clause would read, "unless in case one of my heirs should die, there and then *the* property the benefits derived from the same be equally divided over (among) the remaining heirs;" and we do not feel that we would be doing violence to the language, in the light of the facts, to make such substitution if it was absolutely necessary for a determination of the question involved. However, to sustain the construction contended for by the purchasers, *i. e.*, that the testator, by the qualifying language used against the restraint of alienation, intended only to provide for the sale and distribution of the interest of his deceased heir, would render the language in its operating effect inconsistent with other provisions of the will. He had already provided that in case of the death of one of his children the interest of such child should go in fee to its offspring, if he left any, and if he left none necessarily it would go under the statute of descent and distribution to its surviving brothers and sisters or the children of any deceased ones *per stirpes*. He certainly did not intend, if his deceased child left children, that his or her portion upon his or her death should be sold and divided among the other heirs, for he had already expressly provided that such interest should go to the surviving children; and, on the other hand, if there were no surviving children or offspring it would be almost a farcical performance as well as a useless one for the undivided interest of the deceased child to be sold and the proceeds divided among the other heirs, since as we have seen, they would in that event inherit jointly the undivided interest of such deceased child.

The other view of the case, and the one urged by appellants, is that the testator intended to provide for the support of his wife and his children, some or perhaps all of whom may have been infants at the time he wrote his will in 1887, and that it was his purpose to maintain the property intact as long as all the members of his family survived, but that when one of them died "then that property (or *the* property, as we have before pointed out) should be equally divided among the remaining heirs. There is at least room as well as reason for that interpretation, and since to adopt the construction of the purchasers (the appellees) would render the language useless and purposeless, as we have seen, we are inclined to coincide with the contention of appellants, *i. e.,* that the testator intended by the language referred to, to provide for keeping the property intact as long as all of his surviving children lived, but that when one of them died the restraint against alienation should be lifted.

We are furthermore induced to that conclusion from a consideration of the law with reference to restraints against alienation. Many jurisdictions forbid them entirely, but we have upheld them to measured extents, which are not necessary to enumerate here, but they are not to be favored in the law. Highland Realty Co. v. Groves, 130 Ky. 374. They tend to withhold property from commercial activities and will not be construed to exist from language capable of an opposite interpretation. If, however, they are created within the permissible limitations and the testator or vendor attempts to qualify or modify the restraint by naming an event upon the occurrence of which it would be entirely or partially removed, the qualification when ambiguous will be construed so as to provide for an entire removal rather than only a partial one in obedience to the general policy that even permissible restraints against alienation are not to be upheld unless clearly created.

We, therefore, conclude that the court erred in sustaining the exceptions to the sales, and the judgment is reversed with directions to set aside the order sustaining the exceptions and the order dismissing the petition, and to overrule the exceptions, and for other other proceedings consistent with this opinion.