**C. A. ROBERTSON, Appellant,**

v.

**Sara Stilley SIMMONS, Appellee.**

Court of Appeals of Kentucky.

March 20, 1959.

James G. Wheeler, Paducah, for appellant.

Henry H. Lovett, Jr., Benton, for appellee.

MOREMEN, Judge.

This action seeks to determine the effect which a certain contract has on the title to a small tract of land on Kentucky Lake.

On the 16th day of March, 1949, J. P. Stilley, father of appellee, Sara Stilley Simmons, entered into an agreement concerning this land with appellant, C. A. Robertson.

At the time, J. P. Stilley owned a tract of farm land near Kentucky Lake. E. T. Higgins owned approximately seventeen acres which adjoined the Stilley tract on the east and, further east, (we are not too sure about this direction) was land owned by appellant Robertson. Robertson had an option to purchase the seventeen acre Higgins tract. Neither the Stilley property nor the Higgins tract touched Kentucky Lake.

Immediately south of these two tracts lies a tract of land owned by the Tennessee

Valley Authority known as TVA-XGIR-96, which TVA had advertised for sale.

Robertson and Stilley recognized that if they purchased the tract it might be easily divided so as to permit Stilley to have lake frontage for his farm, and Robertson to have lake frontage for the Higgins tract if he exercised his option to buy it.

On the 16th day of March, 1949, they entered into the agreement above referred to. This contract reads in part:

"Now, therefore, it is agreed by and between the parties hereto, to-wit: One or both of the parties to this contract will attend said public sale to be held by the TVA and bid for and endeavor to buy tract No. XGIR 96 and in the event either of said parties becomes the successful bidder for said tract No. XGIR 96 then in that event the said C. A. Robertson will exercise his option to purchase the tract of land from E. T. Higgins hereinabove mentioned.

"It is agreed by and between the parties hereto that the price bid for said tract No. XGIR No. 96 at the public sale thereof shall not exceed $1000.-00 for the purposes of this contract. In the event either of the parties hereto shall desire to bid more than the sum of $1000.00 at said public sale then in that event it shall be optional with the other party to continue with the further provisions of this contract."

It may be noted that in the last sentence of the above agreement it is stated that if the TVA tract was bid in at a sum of more than $1,000, the other party was given the choice of either enforcing the other terms of the contract or of surrendering his rights under the contract.

On March 22, 1949, Stilley attended the public sale and purchased the TVA property for the sum of $1,650. The amount bid being over a thousand dollars gave to appellant Robertson the right, under the contract, either to demand his share of the property (upon payment of his share of the purchase price under a formula set out in the contract) or to indicate his unwillingness so to do.

The evidence in this case is sketchy, probably because J. P. Stilley has since died with resultant complications as to the introduction of evidence, but nothing affirmative appears in the record that indicates Robertson took definite action to enforce his rights under the contract until August 24, 1949, when he exercised his option to purchase the E. T. Higgins tract and received a deed for it. Properly speaking, this may not have been an action under the contract with which we are concerned because the right to purchase from Higgins arose under a separate agreement. It was, however, some indication that he intended to follow through the contract with J. P. Stilley.

Neither party took active steps in regard to the contract until January 3, 1950, when counsel for Stilley wrote a letter to Robertson which stated:

"Mr. Stilley tells me that this contract has never been carried out so will you please bring your copy at your first convenience in order that we may cancel these contracts and close this business."

Mr. Robertson has no recollection of receiving such a letter. On December 14, 1950, he wrote a letter to J. P. Stilley in which he said in substance that he wanted to hire a surveyor, have the land divided and prepare a deed for the property in accordance with the original agreement. This was not done.

On January 17, 1952, J. P. Stilley died, and the title to the TVA tract was obtained through inheritance by appellee, Sara Stilley Simmons.

In 1956, appellee, who knew nothing of her father's contract with Robertson, entered into negotiations for the sale of the property to a third party. She then learned of the contract and filed suit to quiet title. Appellant, by answer, stated that he was

ready and willing to divide the land in accordance with the contract and asked that the contract be specifically performed. The trial court was of opinion that

"The general rule is that an option given for a valuable consideration does not lapse upon the death of the optioner or optionee, and is binding upon his successor in title, 91 C.J.S. 867. This being true, the right to exercise this option could pass from generation to generation until finally it might vest in some one coming into being after the expiration of 21 years and 10 months after the lives in being at the time of the execution of the contract. Thus, it violates the rule against perpetuities,"

and entered judgment holding the option void.

On this appeal, it is argued by appellant that no actual option was involved here on the ground that the agreement, which Robertson had under the contract with Stilley, was executed in August 1949, when he exercised the option he had with Higgins and purchased the seventeen acre tract, and, since there is no suggestion that Robertson's option from Higgins extended for an indefinite time or that it was not personal to Robertson, the length of time fixed in the option from Higgins to Robertson automatically limited the time in which Robertson could exercise his option given under the contract with Stilley.

■ The words used in the excerpt of the contract above quoted in this opinion do not lead us to that interpretation where the sale price exceeded the sum of $1,000. If Stilley had paid $1,000 or less, we think that Robertson would have been bound to exercise his option to purchase the land from Higgins and all that would have been left to do by the parties would be to divide the property. However, the special clause which provides that if one of the parties paid more than $1,000 for the property, it would be optional with the other whether to continue with the provisions of the contract, must be given some meaning. It seems to us that the turning point was the amount paid for the TVA property and when Stilley paid more than $1,000, Robertson was at liberty to reject the contract regardless of whether or not he exercised his option to buy the Higgins tract.

Appellant also contends that KRS 381.220 embodies only the common law rule against perpetuities (i. e. concerning the remote vesting of estates) and has no bearing on direct restraints on alienation; that the right to exercise both options was personal to Robertson and not available to his heirs or assigns, and, therefore, the question of remote vesting is not involved.

In Cammack v. Allen, 199 Ky. 268, 250 S.W. 963, the court concluded that the statute has no bearing on the rules with respect to direct restraints on alienation. In Gray v. Gray, 300 Ky. 265, 188 S.W.2d 440, 443, 160 A.L.R. 633, a similar statement is found. In that case it was pointed out:

"The statute applies only to the suspension of the ultimate vesting of an estate and not to any restraint upon the right or power of alienation of an estate already vested, or which is or but for the restraint would be indefeasible."

It was further noted that we recognize as valid a partial restraint but not beyond the life of the grantee or devisee. It was said that a confusion exists among our opinions as a result of the failure to recognize as distinct laws, the rule against perpetuities which is covered by the statute and the rule against unreasonable alienation which is common law.

In the opinion in the recent case of Taylor v. Dooley, Ky., 297 S.W.2d 905, 908, the same criticism was expressed which was concluded by saying: "However, it is unnecessary to decide that the statute may not be applied to restraints on alienation."

Nevertheless, we must recognize that we have a number of cases in which it is assumed that, beyond a reasonable length of

time, direct restraints on alienation are not good. Perry v. Metcalf, 216 Ky. 755, 288 S.W. 694; Saulsberry v. Saulsberry, 140 Ky. 608, 131 S.W. 491.

This dichotomy has interested legal writers for some time. In Simes and Smith's "Future Interests" a section is devoted to it. See Sec. 1414, 2nd Ed. See also Vol. 33, Ky.Law Journal, page 118, and Vol. 46, Ky. Law Journal, page 132, where it is said: "It is apparent that in every situation where an interest is reserved and there is some type of restraint one must litigate the question before determination can be made as to whether the limitation or condition is void or valid." In an annotation found in 160 A.L.R. at page 651, Kentucky law gets special treatment, and it is remarked with the use of our own words that the law is in a state of "unfortunate confusion."

It is true that only thirteen American jurisdictions apply the rule to cases involving suspension of power of alienation of vested estates (in addition or alternative to remoteness), while thirty-six American jurisdictions are interested only in remote vesting of interests. See Rubenstein's "Introduction to Perpetuities," Chapters I and II. He indicates that Kentucky applies both rules.

In any event, not too long ago in Maddox v. Keeler, 296 Ky. 440, 177 S.W.2d 568, 162 A.L.R. 578, the court by its holding reaffirmed the view that our statute pertains to the suspension of the power of alienation of vested estates as well as to the possibility of a remote vesting of estates and found it necessary to overrule the earlier case of Coley v. Hord, 250 Ky. 250, 62 S.W.2d 792, which presented almost identical facts; if anything, stronger facts, because the option to re-purchase was in favor of the grantor and his heirs. In the Maddox case, heirs were not mentioned.

In the Coley case there was an option in favor of the grantor and his heirs to purchase the land conveyed at any time either the grantee or his heirs desired to sell it with allowance to the grantee for the costs of any improvements made by him which increased the value of the land. It was held that this option was enforceable because it was not within the statute against perpetuities. The fact that a vested estate was under consideration was not discussed.

In the Maddox case a deed conveying fee simple title contained this clause: "But this conveyance is on the condition that should the party of the Second part desire to sell or convey away said tract of land, the said R. H. Hoskins is to have the option of becoming its purchaser on the condition that he give therefor the sum of one thousand dollars." [296 Ky. 440, 177 S.W.2d 568.] Hoskins died intestate and his heir at law sought to enforce the option against the devisee of the grantee who wished to sell the land. The court held the option void on the ground that it violated the statute. Here, also, we had a vested estate and the court was interested in the possibility of remote vesting. The remote vesting (with accompanying violation of the rule against perpetuities) was worked out by "assuming, without deciding, that the option retained in the deed created a future interest in land, susceptible of inheritance." It was then stated that the right to exercise the option could pass from generation to generation and cause remoteness in vesting. But in the concluding paragraph of the opinion, the court denied its original assumption by stating, "Since we are of the opinion that the clause granting to Hoskins the right to exercise the option to repurchase is violative of the rule against perpetuities, as expressed in KRS 381.220, it is unnecesary for us to determine whether the right of option purported to have been granted by such clause is such an equitable interest in real estate as to be the subject of inheritance." Thus the major premise which served as the basis for the deduction that there might be a remote vesting, was destroyed.

The frequent reiteration in our opinions that KRS 381.220 embodies only a restatement of the common law rule against perpetuities (i. e. remote vesting) perhaps caused us to indulge in the defective logic, while reaching a desirable conclusion. If the court had based its decision on the theory that the option created an unreasonable suspension of the power to alienate, regardless of whether the estate was vested, it would have had ample authority for its position.

In Courts v. Courts' Guardian, 230 Ky. 141, 18 S.W.2d 957, it was said:

"At common law all restraints on the alienation of land held in fee were void, but the rule prevailing in this jurisdiction is that a restraint for a reasonable period may be imposed upon the alienation of property. No invariable test has been prescribed by which to determine the reasonableness of restraints or limitations, and each case must be decided upon the particular and peculiar circumstances presented by it. Chappell v. Frick Co., 166 Ky. 311, 179 S.W. 203; Cammack v. Allen, 199 Ky. 268, 250 S.W. 963; Kentland Coal & Coke Co. v. Keen, 168 Ky. 836, 183 S.W. 247, L.R.A.1916D, 924".

In Thurmond v. Thurmond, 190 Ky. 582, 228 S.W. 29, it was stated that an attempt to restrain the alienation of a fee simple title devised by will during the entire life of the devisee was void.

In Chappell v. Frick Co., 166 Ky. 311, 179 S.W. 203, the court held invalid a limitation to the effect that the grantee should not sell or convey the land except to the heirs of the grantor. The restriction was held invalid because of the limited number of people to whom a sale might be made.

In Carpenter v. Allen, 198 Ky. 252, 248 S.W. 523, a provision in a will that the devisee of land in fee should not sell or dispose thereof to other persons except the other devisees named in the will was held an unreasonable restraint on alienation and void.

In George v. George, 283 Ky. 381, 141 S.W.2d 558, it was held without a general discussion of authority that the son of a testator who had a life estate in certain real estate under the terms of the testator's will had a right to sell or encumber his life estate notwithstanding a clause in the will expressly forbidding him to sell or mortgage the property. The life estate was vested and this case could only have been decided on the ground that there had been an unreasonable restraint of the power of alienation.

The Coley case, which was overruled in the Maddox opinion, might well have been decided on the same ground, but in that case it was even easier to hold that the rule had been violated because a deed which created the option by express terms gave the right to enforce the option to the grantor and his heirs. In the case at bar and in the Maddox case, heirs were not mentioned.

It is now necessary to examine the statement that KRS 381.220 embodies only the common law rule against perpetuities and has no bearing on direct restraints of alienation. The first expression we have been able to find based on the idea that we may be permitted to have one or the other of the rules, but not both, appears to have arisen in Cammack v. Allen, 199 Ky. 268, 250 S.W. 963, 964, where it was written that the statute, here involved, has been on the books for a long number of years and has always been treated and referred to in the opinions of this court as the Kentucky statute against perpetuities. The opinion then stated:

"Long since its enactment, and while it was alive and a vital statute of this state, all of the opinions supra, on the power to restrain alienation, were rendered, and in each of them the question as to the right to restrain alienation of the fee by a person to whom it was conveyed and was considered from the standpoint of the common-law rule upon the subject and the right to impose partial restraints was

granted onto the common-law rule by this court as a pro tanto exception thereto. In none of the opinions was the statute referred to as creating a rule with reference to the imposition of such restraints, but, as stated, in numerous cases it was referred to as our statute against perpetuities, three of which are Kasey v. Fidelity Trust Co., 131 Ky. 604, 115 S.W. 737; Miller v. Miller, 151 Ky. 563, 152 S.W. 542; and Curd's Trustee v. Curd, 163 Ky. 472, 473, 173 S.W. 1148. The statute, therefore, has in effect been construed to apply only to cases and situations where the suspension of alienation was due to the postponement of the vesting of the fee in a person who could alienate it. If such postponement is beyond the life or lives of persons in being and 21 years and 10 months after the creation of the estate, it comes within, not only the common-law rule against perpetuities, but violates the quoted section of our statute which was but declaratory of the common-law rule and was intended only as a statute against perpetuities, and not one dealing with the right of alienation by a person in whom the fee vested within the permissible period prescribed by it."

It will be noted the court points out that in the cases discussed, the question was looked at from the standpoint of the common law rule (against perpetuities) with the exception as to partial restraints, and continues its thought by saying that in the cases referred to there was no reference to the rule concerning imposition of restraints. It is hard to follow to the conclusion (contained in the opinion) that merely because those opinions did not mention the other rule, our statute applies only to remote vesting of estates.

We have examined the cases cited in the above quotation and find no statement which indicates that the expression of a rule against perpetuities denies the rule against restraint of alienation of vested estates.

The opinion in the Cammack case seems to proceed on the theory that we must have one or the other, but cannot have both. As pointed out above, a good many states do. The court, three years later, in Perry v. Metcalf, 216 Ky. 755, 288 S.W. 694, 695, after mentioning the Cammack case and the confusion existing in our opinions, in construing a will which prohibited sale of a farm for thirty years from a fixed date, held the provision void because there was a possibility that "there would be a postponement of the right of alienation for more than 21 years, and 10 months, as allowed by the statute, after the expiration of a life or lives in being." Nevertheless, a number of cases have picked up the conclusion contained in the quoted language from the Cammack case and, to a certain extent, have followed it.

It might be well to look again at this statute that has been on our books for so long. In the first place, the rule against perpetuities was established in Kentucky prior to its enactment as a statute. Tyler v. Fidelity & Columbia Trust Co., 158 Ky. 280, 164 S.W. 939.

Then came the statute which read (before its amendment in 1956) as follows:

"The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter."

■ Under our opinions, this statute was passed (as is often the case) for the purpose of codifying the existing law concerning remote vesting of interests. It did not, therefore, have the effect of abolishing the then existing common law rule against unreasonable suspension of the power of alienation of vested estates, regardless of the fact that some opinions may have so treated it, and then found it necessary to find a remote vesting before

the rule concerning suspension of the power of alienation was applied.

 As we have tried to show above, our dilemma is intensified by the fact that over a long period of time the courts have assumed that the statute has no application to vested estates and at the same time in a number of cases, a few of which we have mentioned above, have applied the common law rule against the suspension of the power of alienation to the extent that in many cases it is found that a period shorter than a life or lives in being and 21 years and 10 months thereafter is an unreasonable restraint on the power to sell. Perhaps the cases, which so carefully pointed out that KRS 381.220 has no bearing on direct restraints of vested estates may be disposed of, or at least reconciled by the acceptance and the recognition that the common law rule against suspension of the power of alienation has existed in the common law of this state regardless of the troublesome statute.

This latter rule, as indicated in some of the authorities mentioned above, is not concerned alone with the length of time that the power may be suspended, but is concerned also with such things as the limitation of the class to which it may be sold. Chappell v. Frick Co., 166 Ky. 311, 179 S.W. 203; Carpenter v. Allen, 198 Ky. 252, 248 S.W. 523.

So when we return to the Maddox case, which was an option case, we find that it could well have been decided on the ground that an option unlimited as to time, regardless of whether the right was real or personal, was void because of the unlimited suspension of the power of alienation.

In the case at bar, the option was also unlimited as to time and thus the suspension of the power of Stilley or his heirs could have been extended, if we take the literal terms of the option, during the entire life of Robertson or perhaps even the lives of his descendants. We have reached the conclusion that such a suspension of the power to alienate a vested estate is unreasonable, not because it might be an inheritable right which would pass to Robertson's descendants during several generations, but because even in his lifetime it would be possible for the restraint to endure for too long a period.

Judgment affirmed.