**THREE RIVERS ROCK COMPANY,**
**Appellant,**

v.

**REED CRUSHED STONE COMPANY,**
**INC., Appellee.**

Court of Appeals of Kentucky.

Nov. 14, 1975.

Henry O. Whitlow, Waller, Threlkeld & Whitlow, Paducah, Balch, Bingham, Baker, Hawthorne & Williams, Birmingham, Ala., for appellant.

Raymond B. Dycus, Richard H. Peek, Smithland, John C. Lovett, Benton, for appellee.

STERNBERG, Justice.

This is an action for a specific performance of a written option for the sale and purchase of an easement. Appellee's resistance to the action was made on five principal grounds, to-wit:

1. Violation of the rule against perpetuities (KRS 381.216);

2. Violation of the common-law rule against unreasonable restraint on alienation;

3. Lack of consideration;

4. Prior abandonment of the rights of grantees; and

5. The provisions of the instrument in question are so vague, indefinite and uncertain as to void the instrument.

The circuit judge determined that the option was void as being in violation of the common-law rule which prevails in this state against direct and unreasonable restraint on alienation. Of the other four defenses, one was discussed by the trial court but none was decided.

Appellant and appellee are both engaged in competitive limestone quarry operations. On and prior to December 19, 1961, Charles R. Jones owned a large tract of land on the north side of the Cumberland River, which was at the time, and had been for several years prior thereto, used as a limestone rock quarry. To the west of the Jones tract and also on the north side of the Cumberland River is a tract of land which was owned by James Norman Tramble and his wife. The Jones and Tramble tracts are separated by a farm owned by third party. There is a narrow haul road that runs parallel with and adjacent to the river. A 30-foot blacktop county road adjoins both tracts on their north. Access to both of these tracts can be had from the county road and by using the haul road along the river. Stone quarried from the Jones tract was loaded on barges from a facility to which access is had by crossing the haul road.

On December 19, 1961, the Trambles executed and delivered to Jones an option to purchase an easement and right of way over their lands to the Cumberland River. The option was lodged for record in the office of the county court clerk of Livingston County, Kentucky, on December 21, 1961. In 1962 Jones leased his quarry site to appellant, who continued to operate the quarry and made plans to expand the operations. On March 15, 1968, the option was assigned to appellant and on the same date the assignment was recorded in the office of the Livingston County Court Clerk. On March 20, 1968, the Trambles sold and conveyed their tract of land to appellee Reed Crushed Stone Company, Inc. This deed too was duly recorded in the office of the Livingston County Court Clerk.

On November 5, 1968, appellant gave written notice to appellee of its election to exercise the option, tendered payment of the consideration, and thereafter received written notice of appellee that the option was not being recognized. Thereupon, suit was filed for a specific performance.

The option provides, inter alia, that:

" * * * James Normie Tramble and his wife, Fannie Tramble, of Livingston County, Kentucky, hereby grant to Charles R. Jones, his Executors, Administrators and Assigns the perpetual option to purchase an easement and right of way for a passway over and across the lands of the grantors located on the Cumberland River in Livingston County, Kentucky, * * *.

"The approximate location of said easement, passway and right of way shall extend from the property line of the grantors to a point on the bank of the Cumberland River to be selected by the grantee.

" * * * The grantee is further granted the right to use the river bank and frontage along the property of grantors for wharfage purposes for barges and river craft, for the purpose of transporting limestone, quarry products, supplies, materials, equipment and other items of freight, to and from the Cumberland River, and over and across said right of way; and the grantee is further granted the right to use not exceeding two acres of land to be laid off along the river bank extending back therefrom not more than two hundred (200) feet for wharfs, docks, buildings, structures, machinery and equipment to be used in the loading and unloading of limestone, quarry products, supplies, materials, equipment and other items of freight.

"Grantee may exercise this option at anytime by giving the undersigned written notice through the U. S. Registered mails to the grantors * * *. In the event the grantee actually enters upon the premises of grantors, after the exercise of said option, with the intention of

using the passway or right of way for the purposes permitted he shall pay to the grantee the sum of Fifty and No/100 ($50.00) Dollars per month, in advance, for each month or part of a month during which said easement and the loading facilities covered thereby are actually used."

■ On this appeal appellant contends that the option is not a direct unreasonable restraint on alienation; that, at most, it may be in conflict with the law against perpetuities. On the other hand, appellee sees the case as one involving an unreasonable restraint on alienation, which the trial court found to exist and upon which appellant was denied relief. The practical difference between voiding the option because (1) it is in violation of the law of perpetuities and (2) it is a direct unreasonable restraint on alienation, is that by the former, it is enforceable for the first 21 years (KRS 381.216). Since appellant has exercised its right to purchase within this 21 years, it would be entitled to specific performance of the option. On the other hand, if the action of the lower court is upheld, then and in that event the option is void and appellant is not entitled to specific performance.

■ The common-law rule against restraint on alienation was designed to prevent the taking from the owner of the power to alienate property. The common-law rule against perpetuities was designed to prevent interests from being created in the too distant future.

This court recognizes the existence of these separate and distinct rules of law. *Caudle v. Smither,* Ky., 427 S.W.2d 227 (1968); *Gilbert v. Union College,* Ky., 343 S.W.2d 829 (1961); *Robertson v. Simmons,* Ky., 322 S.W.2d 476 (1959). We further recognize the confusion which has existed in an effort to distinguish and apply the rules to options. *Robertson v. Simmons,* supra. The time has come, as a matter of fact it is

overdue insofar as options are concerned, when this court should clarify the situation.

■ We have stated that restraints against alienation are not favored in law. *Cahill v. Pelzer,* 204 Ky. 644, 265 S.W. 32 (1924). In *Newsom v. Barnes,* 282 Ky. 264, 138 S.W.2d 475 (1940), we held that it is the policy of this state to make all interests in or claims to real estate the subject of sale or devise by will. As a further exemplification of the right of a person to be free and uninhibited in the disposition of his property, in *Goodloe's Trustee v. Goodloe,* 292 Ky. 494, 166 S.W.2d 836 (1943), we held that where one of two permissible constructions of an ambiguous will renders it violative of the rule against perpetuities and the other does not, the former will be rejected and the latter adopted.

■ The common-law rule against perpetuities found its way into the statutes as KRS 381.220. *Robertson v. Simmons,* supra; *Fidelity & Columbia Trust Co. v. Tiffany,* 202 Ky. 618, 260 S.W. 357 (1924). At the regular session of the 1960 Kentucky General Assembly, KRS 381.220 was repealed and KRS 381.215 and KRS 381.216 were enacted. (Ch. 167, Acts 1960). These latter two statutes have been argued both in support of and in opposition to the judgment of the circuit court. These statutes relieve the harshness of the prior law against perpetuities and substitute the more relaxed rule of "wait and see".[1] The "wait and see" doctrine is a rule which permits consideration of events occurring after inception of the instrument which are relevant to the vesting of a future interest, so that if the contingency upon which the interest is limited actually occurs within the period of the rule, the interest is valid. 61 Am.Jur.2d, *Perpetuities,* § 26.

■ The free alienation of the fee simple title to real property is the right that is sought to be protected by both statutes against perpetuities and the restriction

---

1. For a brief and concise statement of the historical development of the law against perpetuities, see 61 Am.Jur.2d, *Perpetuities,* § 6.

against unreasonable restraint on alienation. The trial court was of the opinion that *Robertson v. Simmons, supra,* was the controlling law of the case; accordingly, it found the option to be a direct unreasonable restraint on alienation rather than subjecting it to the rule against perpetuities.

In an effort to bring clarity and consistency out of utter confusion, we need to examine prior enunciations and understand the principles for which they stand and the reasoning that brought forth the result.

An option has long been recognized as not a sale but a right to exercise a privilege. *Cawthon v. McAlister,* 217 Ky. 551, 290 S.W. 316 (1927); *Carter v. Frakes,* 303 Ky. 244, 197 S.W.2d 436 (1946); *Miller v. Hodges,* 308 Ky. 655, 215 S.W.2d 99 (1948).

In *Coley v. Hord,* 250 Ky. 250, 62 S.W.2d 792 (1933), this court held that a written option in favor of a grantor and his heirs to purchase land from the grantee and his heirs at any time either grantee or his heirs desired to sell and grantor or his heirs desired to buy was not a violation of the rule against perpetuities. We reasoned that the option was "susceptible of execution according to its own terms at any time Coley or his heirs desired to sell the land and Hord and his heirs desired to purchase it. This may have happened at any time and it did not constitute a limitation or condition forbidding the selling and conveying of the land for a longer period than the continuance of a life or lives in being at the time of its execution, and 21 years and 10 months thereafter."

In *Maddox v. Keeler,* 296 Ky. 440, 177 S.W.2d 568 (1944), we held that a provision in a deed which provided that the conveyance was on the condition that should the party of the second part desire to sell or convey away the tract of land, then Hoskins was to have the option of becoming its purchaser, was void as against perpetuities, as expressed in KRS 381.220. We said:

"The rule against perpetuities is not to be tested by actualities, but by possibilities. Thus, if it is at all possible for a person, not in existence twenty-one years and ten months after the expiration of a life or lives in being at the time of the creation of the estate, to fall heir to the equitable interest in the property limiting the absolute power of alienation, such limitation is void. * * * "

*Caudle v. Smither, supra.*

In *Maddox* the case of *Coley v. Hord, supra,* was analyzed and specifically overruled. We assumed, without deciding, that the option was not personal and was susceptible of inheritance.

Professor Dukeminier, in his work "Kentucky Perpetuities Law Restated and Reprinted", 49 K.L.J. 1 (1960), p. 119, in analyzing the *Maddox* case, says:

"* * * The arguments of the Court, reduced to a syllogistic form, may be briefly stated as follows: first, interests in land susceptible of inheritance, since they go on from generation to generation, may cause remoteness in vesting; second, assuming this option to be an interest in land susceptible of inheritance, there is a possibility of remoteness in vesting; third, since there is a possibility of remoteness in vesting, the option violates the rule against perpetuities and it is unnecessary to determine whether or not it is an interest in land susceptible of inheritance. This is faulty logic on its face. The way the propositions are set up, the possibility of remoteness depends on the provision being construed as an interest in land susceptible of inheritance; hence, the last part of conclusion, that it is unnecessary to decide whether or not the option is the required type of interest in land, contradicts the second premise. It may well be said that the Court means that any interest, personal or real, which might create a possibility of remoteness may be held void as a violation of the rule against perpetuities, but this is certainly not made clear by the opinion."

In *Robertson v. Simmons,* supra, we were faced with a written contract between two named persons which granted either one of them the option to purchase certain designated land from the other. J. P. Stilley, in whose name the title was recorded, died. Thereafter, the other person (Robertson) sought to exercise his option and force specific performance of the contract by Stilley's heir. The trial court was of the opinion that,

" 'The general rule is that an option given for a valuable consideration does not lapse upon the death of the optioner or optionee, and is binding upon his successor in title, 91 C.J.S. 867. This being true, the right to exercise this option could pass from generation to generation until finally it might vest in some one coming into being after the expiration of 21 years and 10 months after the lives in being at the time of the execution of the contract. Thus, it violates the rule against perpetuities,' * * * "

and entered judgment holding the option void. After a lengthy discussion of the troublesome question of whether the statute against perpetuities applied to vested estates, this court said:

"In the case at bar, the option was also unlimited as to time and thus the suspension of the power of Stilley or his heirs could have been extended, if we take the literal terms of the option, during the entire life of Robertson or perhaps even the lives of his descendents. We have reached the conclusion that such a suspension of the power to alienate a vested estate is unreasonable, not because it might be an inheritable right which would pass to Robertson's descendants during several generations, but because even in his lifetime it would be possible for the restraint to endure for too long a period."

*Gilbert v. Union College,* supra, involved the application of the 1960 perpetuities act to options retained in deeds or contracts for the sale of residential building lots. The trial court found, and we affirmed, that the options did not violate the rule against unreasonable restraint or the rule against perpetuities. Writing for the court, Justice Milliken said:

" * * * The 'unfortunate confusion' in this field, as commented upon by Judge Moremen in *Robertson v. Simmons,* Ky.1959, 322 S.W.2d 476, arising under former Section 381.220 governing restraints on alienation (now repealed), we believe will be avoided by new Section KRS 381.216, which substitutes actual events as the test for determining the validity of an interest rather than the metaphysical possibilities doctrine which dreamed up the 'fertile octogenarian', the 'unborn widow' and other possibilities as just reasons for invalidating interests in property. * * * * "

We have analyzed the legal principles involved and now turn our attention to the reasoning that was used in their application.

In *Coley v. Hord,* supra, we recognized a restraint on alienation and the possibility of future vesting by the use of the word "heirs" in the option. We held that irrespective of the use of the word "heirs" the option was susceptible of execution at any time and was not, therefore, a violation of the rule against perpetuities.

In *Maddox v. Keeler,* supra, we recognized a restraint on alienation, even though the word "heirs", or words of like import, were not used in the option, by accepting the doctrine of possibility of remoteness in vesting, which voided the instrument as a violation of the rule against perpetuities.

In *Robertson v. Simmons,* supra, we reasoned that a personal option was a vested estate which is subject to the possibility of remoteness in vesting. We there held that the remoteness in vesting did not make the option subject to the rule against perpetuities but did make it subject to the rule against unreasonable restraint on alienation.

In *Gilbert v. Union College,* supra, which was decided after the repeal of KRS 381.220 and the enactment of KRS 381.215, we reasoned that options to purchase property did not violate the rule against unreasonable restraint on alienation or the rule against perpetuities.

We will attempt to give more than lip service to Justices Milliken's and Moremen's concern for the confusion that has arisen in this area of the law. The 1960 perpetuities act was meant as a turning point in construing not only restraints on alienation of estates but the possibility of future vesting of estates.

In speaking to the purpose, we said in *Gilbert v. Union College,* supra:

" * * * In any event, the new standard should relieve somewhat the hesitation which has haunted both the bench and bar in dealing with the complex problems in this area of the law. * * * "

In our effort to bring clarity out of confusion, we hold that an option, whether it be an ordinary option or a preemptive option, creates an interest which is subject to vesting at a future time. We are of the opinion that options, whether they be ordinary, as in this case, or preemptive, created after the effective date of the 1960 perpetuities act are not subject to the rule against direct restraint on alienation but are subject to the rule against perpetuities.

The option in the instant case was executed subsequent to the effective date of the 1960 perpetuities act and, therefore, would not be governed by the rule against direct unreasonable restraint on alienation, but would be governed by the rule against perpetuities. We are further of the opinion that the appellant is entitled to the benefit of the "wait and see" doctrine (KRS 381.-216), since it sought to enforce the option within twenty-one years after its execution.

All cases heretofore decided by this court which are in conflict herewith are overruled.

Having so determined, we must next look at the other issues. The trial court did not overlook these other issues, but purposely did not decide them. Since the trial court did not pass on their efficacy, they are not before us for consideration. Therefore, we make no determination of their propriety. *Maynard v. Maynard,* 178 Ky. 478, 199 S.W. 26 (1917).

The judgment is reversed.

All concur, except CLAYTON, J., who did not sit.