**CENTRAL BANK & TRUST COMPANY, a Kentucky corporation, as Executor of the Estate of Garvice D. Kincaid, Deceased et al, Movants,**

v.

**Joan D. KINCAID, Respondent.**

Supreme Court of Kentucky.

May 26, 1981.

As Modified on Denial of Rehearing July 7, 1981.

Kincaid, Wilson, Schaeffer & Hembree, P.S.C., Miller, Griffin & Marks, P.S.C., Lexington, Bert T. Combs, Robert K. Cullen, Wyatt, Tarrant & Combs, Louisville, for movants.

Ronald L. Gaffney, Barnett & Alagia, Louisville, James Park, Jr., Paul E. Sullivan, Sullivan & Mohr, Lexington, for respondent.

STERNBERG, Justice.

This is an action to construe a unilateral option contract. In June of 1973 (the exact date is not shown by the record), Joan Kincaid granted an option to G. D. Kincaid for the privilege of purchasing 90,760 shares of stock owned by her in the Lexington Finance Company, for which she had paid $196,424.25. The option is not lengthy, so we copy it in full, to-wit:

"For and in consideration of One Dollar ($1.00) cash in hand paid, and other good and sufficient valuable consideration, the receipt of which is hereby acknowledged, I, Joan D. Kincaid, do hereby give, sell; assign, and transfer unto G. D. Kincaid, an irrevocable exclusive option, for a period of five (5) years from the date hereof, to purchase all of the shares of stock I own of Lexington Finance Company for a consideration of Two Dollars ($2.00) per share, and the said G. D. Kincaid may exercise this exclusive irrevocable option at his sole discretion at any time within the said five (5) years from the date hereof by paying for said stock the price of Two Dollars ($2.00) per share to me or my duly authorized representative, administrator or executor, and I do further covenant that I will neither sell nor further encumber said stock during the term of this option.

IN TESTIMONY WHEREOF, witness my hand this ＿＿＿ day of June, 1973."

On November 21, 1975, G. D. Kincaid died testate without exercising his right of pur-

chase. However, the executor of his will, Central Bank & Trust Company, sought to exercise the option and to that end tendered Joan the sum of $181,520. The offer was refused, and on June 19, 1977, Joan filed a suit in the Fayette Circuit Court demanding that the option be declared null and void and of no effect. The executor was made a party defendant, and in its response it demanded that the trial judge not only declare the ownership of the stock but that Joan be required to accept the tendered offer as full payment for said stock. The issue was submitted to the trial court on the executor's motion for summary judgment. The motion was granted and the option was declared to be valid and enforceable by the executor. On appeal to the Court of Appeals of Kentucky, the judgment of the trial court was reversed. On October 28, 1980, this court granted review.

The deciding issue which this court gleans from the record and the briefs of the parties is whether the right to purchase the shares of stock was personal to G. D. Kincaid or whether it passed to the executor of his will.

First of all we need to determine whether the terms of the option are ambiguous. If they are, then extrinsic evidence may be resorted to in an effort to determine the intention of the parties; if not, then extrinsic evidence may not be resorted to. The criterion in determining the intention of the parties is not what did the parties mean to say, but rather the criterion is what did the parties mean by what they said. An ambiguous contract is one capable of more than one different, reasonable interpretation. The right to contract is a valuable right limited only by constitutional or statutory provisions, public policy, or the desires of the parties. In our effort to determine whether the terms of the option are ambiguous, we have challenged the intention of the parties by every expression and statement contained within the four corners of the instrument. As we do this, any doubt that may have come forth in each instant fades like ectoplasmic vapor when exposed to the light of the option as a complete instrument.

We are of the opinion that the option is not ambiguous.

Is the right to purchase the shares of stock personal to G. D. Kincaid? An option has long been recognized not as a sale but as a right to exercise a privilege. *Three Rivers Rock Co. v. Reed Crushed Stone*, Ky., 530 S.W.2d 202 (1975).

At the outset we note that there is a five-year restraint on the sale or alienation of the stock to anyone other than G. D. Kincaid. The common-law rule against restraint on alienation was designed to prevent the taking from the owner of the power to alienate property and is not favored in law. *Three Rivers Rock Co. v. Reed Crushed Stone*, supra. This court has long recognized that the right to purchase, irrespective of the use of words of descent or of alienation, may, where the intent of the parties is so manifest, pass to and be exercised by the heirs, administrator, executor or committee of the optionee. *Three Rivers Rock Co. v. Reed Crushed Stone*, supra; 91 C. J. S. Vendor and Purchaser, Sec. 14.

The option neither states the right of purchase is or is not personal to the optionee, nor does it state that the optionee and he alone possesses the right of purchase. The terms of the option (1) prohibit Joan from selling or encumbering the stock during the term of the option (five years); (2) provide that the purchase price may be paid to Joan or to her executor, administrator or representative; (3) name G. D. Kincaid and he alone as the optionee; (4) provide that "G. D. Kincaid may exercise this . . . option;" and (5) state that the exercise of the option is at the sole discretion of G. D. Kincaid. The option does not provide that the privilege of purchasing the stock is to G. D. Kincaid or his executor, administrator, committee or assigns. It is significant to note that the power to exercise the option did not include or describe any source other than G. D. Kincaid, to-wit: his executor, administrator, committee or assigns. Had the parties desired the option to be

exercisable by anyone other than G. D. Kincaid, the necessary descriptive designation could easily have been made.

Counsel for respondent has called this court's attention to the case of *In re Estate of Sifferman*, Mo.App., 603 S.W.2d 30 (1980). Although this case is not on all fours with the subject action, it does present similar questions. Therein, Tom Sifferman owned 200 acres of land. He and his son Ray contracted for Ray to purchase 160 of the 200 acres, with an option to purchase the remaining 40 acres during Tom's lifetime should Tom decide to sell or within one year after Tom's death for the sum of $5,000. The agreement made the option to purchase the 40 acres binding on the heirs, administrators, executors or legal representatives of the owner (optionor), but it was silent as to whether it could be assigned or devised by the optionee or inherited by his heirs in the event the optionee predeceased the owner. The optionee did predecease the owner, his father. After the death of the optionee, his wife attempted to assign any and all rights that she had in the agreement to Bob Sifferman, son of the optionee. Bob filed suit to enforce the terms of the option contending that the right of purchase was not personal but survived the death of the optionee. The trial court held to the contrary. The Missouri Court of Appeals said:

> "... It has been held that if the option contract does not specifically provide that it is binding on the heirs and assigns of the parties, and does not indicate that the agreement is binding beyond the lifetime of the parties to the agreement, such an agreement is a personal one which does not extend beyond the respective lives of the parties....
>
> In applying the law of these cases to the facts here, it is evident that the option purchase agreement in question was personal to Ray. The agreement specifically provided that it was binding on the heirs and assigns of Tom, but did not state that the optionee included the heirs or assigns of Ray. This indicated that the signatories to the agreement, Ray and Tom, intended that the option to purchase was personal to Ray only...."

In *Kuhfeld v. Kuhfeld*, S.D., 292 N.W.2d 312 (1980), the Supreme Court of South Dakota considered an agreement "granting an irrevocable option to Edward Kuhfeld to purchase the remainder of the land distributed." The option provided that it " 'is agreed and understood by the undersigned that this option shall extend to and be binding upon each of the parties to this option and to their heirs, personal representatives, successors and assignees.' " The court said:

> "There is a strong tendency to construe an option or preemption right to be limited to the lives of the parties, unless there is clear evidence of a contrary intent.... The provision in the option agreement that it shall remain in full force and effect until exercised by Edward Kuhfeld indicates a personal right which would terminate upon his death...."

The court concluded that "the option to purchase will terminate on the death of the optionee."

The case of *Waterstradt v. Snyder*, 37 Mich.App. 400, 194 N.W.2d 389 (1971), is an action to construe the following language in a deed: "The grantee agrees that if she ever desires to sell the aforementioned property, the grantors herein are to have the right and option to buy the same for $9,000."

The grantee died testate without exercising the option to reconvey to the grantors. A suit was brought by the grantors against the executor of the will of the grantee to repurchase the property. The trial court held the option was binding on the executor. The Court of Appeals of Michigan reversed, and in doing so, the court wrote:

> "The language in the deed means just what it says, nothing more, nothing less. 'If the grantee * * * ever desires to sell the * * * property, the grantors * * * have a right to buy the same for $9,000.'
>
> If she had desired to sell, she would have exercised her option to do so. Then the grantors could have exercised their option to buy it back at the specified

price. She did not, so the grantors could not.

If the grantors had meant to bind her personal representative, her successors in title, or assigns (assuming they could), they should have said so. We decline to rewrite the language of the option. We make no distinction between 'personal representative' and 'successor' or 'assigns.' In logic, we could not do so. We hold the option to repurchase terminated on the death of the grantee because it required her personal volitional act in her lifetime...."

In *Iglehart v. Jenifer*, 35 Md.App. 450, 371 A.2d 453 (1977), the sole question presented is, "did the appellant's right of first refusal to purchase certain real estate terminate upon the death of the optionor?" Iglehart and Jenifer entered into an option wherein Jenifer granted to Iglehart, "his heirs and assigns, the irrevocable right, privilege and option to purchase the premises described hereinbelow" when the optionor receives a firm offer to purchase the said premises by another party. The court said:

"... the parties were very careful to use the words, 'heirs and assigns' when referring to the optionee. They were just as careful to eliminate those words when referring to the optionor. The phrase, 'heirs and assigns,' as used in this agreement is a legal term with a technical meaning.... It is obvious that where the parties intended that the rights were to pass to the personal representatives, the relevant phrase was included, and where they intended the obligation to be personal and to cease upon the death of the optionor, it was omitted."

In concluding, the court wrote: "We hold, as did the trial judge, that the agreement terminated upon the death of Mrs. Jenifer."

The word "heirs" is a word of art, and the phrase "heirs, personal representatives and assigns is a legal term with a technical meaning. The lack of these words of limitation is evidence of the absence of an intention to permit the right of purchase to be exercised by the executor and restricts the right of purchase to G. D. Kincaid and to him only. Although the manner in which the various jurisdictions approach the issue is not uniform, there is unanimity of purpose in all jurisdictions; that is to arrive at the intention of the parties. This, we are of the opinion we have done.

In disposing of the issue, we find it unnecessary to consider the family relationship of the optionor and the optionee. In the absence of any showing in the option itself, we will consider the option as having been negotiated at arm's length.

The decision of the Court of Appeals is affirmed, the judgment of the trial court is reversed, and the cause is remanded to the trial court for entry of a judgment consistent herewith.

PALMORE, C. J., and AKER, CLAYTON, LUKOWSKY, STEPHENSON and STERNBERG, JJ., sitting.

All concur except STEPHENSON, J., who dissents and files herewith a dissenting opinion.

STEPHENSON, Justice, dissenting.

The majority opinion correctly states the issue here, whether the option was personal to G. D. Kincaid or whether it passed to the executor of his will. I also agree that the option by its terms is not ambiguous.

Implicit in the holding that the option was personal and did not pass to the Kincaid estate is that if it was found that the option was not personal the Kincaid estate would prevail.

I view the option as a contract and as stated in *Williston on Contracts*, vol. 3, sec. 415, at p. 69:

A Contract of Option is Assignable. Some question has at times arisen as to the power of one who holds an option to assign his right to another. An option if given for consideration or under seal is a contract; and the right of the promisee might be supposed to be assignable as any other contractual right. But such an option is also an offer to enter into a further relation; namely, that of seller

and buyer. And it is a general rule that an offer can be accepted only by the person to whom it is made. It seems reasonable where a contract right of value is concerned (an option often is of value) and where the performance of the offeree can be as effectively rendered by anyone as by him, that the rule applicable to revocable offers should not be pertinent. It is accordingly generally held that an irrevocable option (that is one which is a contract) can be enforced by an assignee. The rule is well stated in these words: In the absence of an express provision in a contract prohibiting it (an) option is assignable.

Also 6 Am.Jur.2d, Assignments, sec. 20, at p. 204:

The assignability of the right of the holder of an option is governed by the general principles which govern the assignability of other contract rights. It is generally held that, in the absence of an express provision in an option agreement forbidding its assignment, the holder of the option may assign his right to a third person who may exercise the option, unless there is something in the circumstances, the subject matter, or the nature of the transaction which justifies the assumption that a particular trust or confidence was reposed in the optionee alone, or shows that the option was intended only to be open to acceptance by him personally.

See also *Dahl v. Zabriskie*, 249 Iowa 584, 88 N.W.2d 66 (1958), and *Cochran v. Taylor*, 273 N.Y. 172, 7 N.E.2d 89 (1937).

There is nothing in this option that shows any relationship or that particular trust or confidence was reposed in the optionee alone. In the absence of these circumstances being shown in the option, it can be assigned; and if it is assignable, I see no valid reason why it would not pass to the Kincaid estate.

The foreign cases relied upon in the majority opinion place emphasis on the fact that the option here did not recite to Kincaid's "heirs etc." I do not attach any particular significance to this lack, there-fore, I believe the option here was assignable and passed to the Kincaid estate.

I would reverse the opinion of the Court of Appeals and affirm the trial court. Accordingly I dissent.