NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0488n.06
Filed: July 10, 2007

No. 06-5007

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MAYSVILLE MARKETSQUARE ASSOCIATES LIMITED PARTNERSHIP, a Kentucky Limited Partnership, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED |
| THE KROGER COMPANY, | ) ) ) | STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| Defendant-Appellee. | ) ) | |

Before: MOORE, ROGERS, and GIBSON,[*] Circuit Judges.

**ROGERS, Circuit Judge.** This appeal arises from a dispute between Marketsquare Associates Limited Partnership, the landlord of a shopping center, and The Kroger Company, a tenant in that shopping center. The parties dispute the interpretation of a provision in their 1993 lease agreement, which provided that Kroger would reimburse Maysville as landlord for a portion of the costs of operating the "Common Areas" of the shopping center. The same section excludes at least some salaries from the costs which may be charged to the tenant. Because this section of the

---

[*]The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

lease is ambiguous, we affirm the district court's denial of summary judgment to Maysville, but reverse the grant of summary judgment to Kroger.

Maysville and Kroger entered into a lease agreement on April 20, 1993, in which Kroger leased space in the Maysville Marketsquare Shopping Center from Maysville. One term of the lease required Kroger to pay Maysville "a pro rata share of the Landlord's operating cost of the Common Areas." In August 2004, Maysville filed this suit in Kentucky circuit court, alleging, among other things, that Kroger underpaid various Common Area Maintenance ("CAM") charges for 2004. Kroger obtained removal of the suit to federal court on grounds of diversity jurisdiction and counterclaimed for overpayment of CAM charges in 2003.[1]

Before the matter was brought before the magistrate judge for summary judgment, the parties by joint stipulation agreed that "[t]he only issue that remains in dispute is in regard to Maysville Marketsquare's inclusion of the salaries of Clarence Botkin, the Maysville Shopping Center onsite manager, and the salaries of Mr. Botkin's assistants, in CAM charges."

---

[1]We note that because the parties have settled various aspects of their dispute, the total amount in controversy now is only about $60,000. Diversity jurisdiction is proper, however, because, when the district court accepted jurisdiction, in addition to the amount it claimed was owed for CAM charges, Maysville also sought repossession of the property that is the subject of the lease. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) ("In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal."). The annual rent under the lease is in excess of $400,000.

The lease agreement defined the parties to the lease agreement as "Maysville Marketsquare Associates, Limited Partnership, a Kentucky Limited Partnership, ('Landlord') and The Kroger Co., an Ohio corporation, ('Tenant')." JA 97. The relevant section of the contract provided as follows:

> B. <u>COMMON AREA MAINTENANCE REIMBURSEMENT</u>. Commencing on the date upon which Rentals become due hereunder Tenant, shall pay Tenant's pro rata share of Landlord's operating cost of the Common Areas, as hereinafter defined, in the manner hereinafter provided. . . *Tenant in no event shall be responsible for any portion of Landlord's costs associated with or related to (i) office overhead, salaries, depreciation and administrative costs,* (ii) replacements of capital items, (iii) individual expenditures in excess of $25,000 which typically would be capitalized as opposed to expensed.
>
> For the purposes of this Paragraph 22B, *"Landlord's Operating Cost of the Common Areas" is defined as including all of Landlord's costs and expenses of operating and maintaining the Common Areas in the Shopping Center*, and shall be deemed to include, but not be limited to, landscaping, snow removal, cleaning, utilities (but not electric), fire protection, security, traffic control signs, patching not in excess of $5,000 per year, restriping, policing, Common Area trash removal, sewage disposal, and an administrative fee equal to three percent (3%) of the Landlord's Operating Cost of the Common Areas.

JA 114-115 (emphasis added).

Maysville alleges that from 1993 until 2004, Kroger paid its pro rata share of the billed CAM expenses, including an amount that corresponded to a pro rata share of the salaries of Clarence Botkin and his assistants. Kroger denies that it ever knowingly paid any part of the salaries. During that entire period daily common area maintenance (consisting of cleaning the parking lot and sidewalks, shoveling snow from the parking lot and sidewalks, and caring for the grounds) was performed by Botkin and his assistants. From 1993 until 2002, Botkin was employed by Pan Pacific Retail Properties, Inc. (Pan Pacific). Pan Pacific owned Maysville Market as general partner,

3

managed the payment of common area expenses for the shopping center, and billed the tenants for reimbursement of CAM expenses. In 2002, Pan Pacific formed a separate shopping center maintenance company, West Coast Property Maintenance, LLC, and Botkin and his assistant were employed by West Coast during the period relevant to the claims presented in this case. West Coast billed the salaries at issue to Pan Pacific as "Labor Services @ Maysville." Pan Pacific then included the amount of those payments in the CAM charges it billed to Kroger under the lease.

Both parties moved for summary judgment and consented to disposition of their motions, and a bench trial if necessary, by the magistrate judge pursuant to 28 U.S.C. § 636(c). Kroger sought reimbursement of $58,136.94 in overpayment of CAM charges for 2003 and 2004 if it is not responsible for the portion of CAM charges that was paid as salary to Botkin and his assistant. Maysville sought an additional $4,801.81 in unpaid CAM charges for the labor services provided by Botkin and his assistant. The district court denied Maysville's motion, granted summary judgment to Kroger, and entered judgment for Kroger in the amount of $58,136.94. Maysville filed this timely appeal.

This court reviews an order granting summary judgment de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). An order denying summary judgment is reviewed for abuse of discretion, except when the denial is based on purely legal grounds, as appears to the case here; in that case, review of the denial is de novo. *McMullen v. Meijer*, Inc., 355 F.3d 485, 489 (6th Cir. 2004). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a

motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A federal court exercising its diversity jurisdiction applies the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Kroger was not entitled to summary judgment because the language upon which Kroger relies is ambiguous and genuine issues of material fact exist with respect to the extrinsic evidence bearing upon the proper construction of the salaries provision. Contrary to Kroger's assertion, the lease is ambiguous with respect to whether or not a portion of the salaries paid to workers who provide CAM services may be charged to Kroger as the tenant.

Kroger argued, and the district court held, that the language in the salaries clause was not ambiguous and, therefore extrinsic evidence was not to be considered on this issue. *See Central Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981)(extrinsic evidence may be resorted to in an effort to determine the intention of the parties only if the contract is ambiguous). In determining whether a contract is ambiguous, the court must determine whether the contract is "capable of more than one different, reasonable interpretation." *Id.*

Read in context, the salaries clause is ambiguous with respect to the issue of salaries paid to laborers who provide CAM services. Whether or not the meaning of the salaries clause is

unambiguous in isolation,[2] when read with the entirety of section 22B, the proper treatment of a salary, or portion of a salary, paid to a worker whose job consists primarily of providing the very common area maintenance for which section 22B provides reimbursement is unclear. *See International Union of Operating Engineers v. J. A. Jones Const. Co.,* 240 S.W.2d 49, 54 (Ky. 1951) ("a contract is to be interpreted as a whole and the entire instrument considered to determine the meaning of each part").

Kroger's reading of the salaries clause is that any salary paid by the landlord may not be included in the CAM charge, regardless of the nature of the work done by the salaried employee. That reading appears to conflict with the plain language of the second paragraph which expressly provides that the CAM costs for which Kroger is partially liable includes "all of Landlord's costs and expenses of operating and maintaining the Common Areas in the Shopping Center, and shall be deemed to include . . . landscaping, snow removal, [and] cleaning." The second paragraph clearly indicates that the costs of doing most of the things that Botkin and his assistant did are part of "the Landlord's operating cost of the Common Areas" for which the tenant is responsible for a pro rata share.

There are two ways to reconcile these provisions of section 22B, neither of which is entirely clear from the text of the agreement alone. First, it could be that the salaries clause on which Kroger

---

[2]Arguably, a reasonable reader could look at the other items listed with salaries and conclude that the kind of salaries intended are like the other items listed, fixed costs of the landlord's business which are not directly related to providing the common area maintenance for which the tenant agreed to pay.

relies is meant to carve out some kinds of CAM costs from the reimbursable CAM costs defined in the second paragraph. Under that interpretation, the section as a whole means that CAM costs like snow removal and cleaning are chargeable to the tenant unless they are done by a salaried employee, in which case they are no longer reimbursable. Alternatively, the terms of the salaries clause could be interpreted to apply only to salaries that are paid to the landlord's office and managerial staff, such that "salaries" should be understood as an elaboration on "office overhead" and "administrative costs." According to that interpretation, the salaries clause has no application to salaries paid to employees who provide the common area maintenance for which the tenant agreed to pay.

Because each of these interpretations is reasonable, resolution of the conflict requires the court to weigh extrinsic evidence of the parties' intentions. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). Here the parties offer conflicting factual evidence as to their intentions at the time the lease was entered into, especially regarding the course of dealing between the parties under the lease in the decade before the period addressed by this suit. Maysville claims that Kroger knowingly paid the disputed salary amounts from 1993 until 2003 without objection. Kroger responds that it never knowingly did so. This factual dispute presents a genuine issue of material fact that precludes granting Kroger's motion for summary judgment.

The same ambiguity and factual dispute also precludes summary judgment in favor of Maysville. While not unambiguously supported by the language of the lease, the interpretation of the lease adopted by the district court—namely that the clause in paragraph 22B excluding "Landlord's cost associate with or related to . . . salaries" means that any salary paid by Maysville,

or one of its related corporate entities, are excluded from the CAM charges—is reasonable. Because the lease language is subject to more than one reasonable interpretation, and because the extrinsic evidence is contested, summary judgment for either party in inappropriate at this juncture.

For the foregoing reasons, the district court's denial of Maysville's motion is AFFIRMED, the judgment in favor of Kroger is REVERSED, and the case is REMANDED to the district court for further proceedings.

**GIBSON, Circuit Judge.** I respectfully concur in part and dissent in part. I would affirm the district court's judgment in full, both as to the denial of Maysville's summary judgment motion and the granting of Kroger's summary judgment motion. The magistrate judge correctly concluded that no ambiguity exists in the relevant lease language and interpreted the lease accordingly.